DA 11-0697

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 58

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

BRIAN ELIEN HOLM,

       Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 10-520
Honorable Robert L. Deschamps, III, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

         Richard R. Buley, Tipp & Buley, P.C.; Missoula, Montana

      For Appellee:

         Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General; Helena, Montana


Submitted on Briefs:  December 19, 2012
Decided:   March 5, 2013


Filed:

_____
                 Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Brian Holm (Holm) appeals his conviction in the Fourth Judicial District, Missoula County. Holm alleges that the District Court denied Holm's constitutional right to effective assistance of counsel when the District Court denied Holm's request for substitution of counsel and for a continuance eight days before trial so that Holm could retain private counsel. We affirm.

¶2     Holm presents the following issues on appeal:

¶3     *Whether the District Court abused its discretion by finding that Holm's counsel was providing effective assistance of counsel?*

¶4     *Whether the District Court abused its discretion by failing to grant a continuance eight days before trial to allow Holm to retain private counsel?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5     Holm was driving northbound on Brooks Street in Missoula, Montana, around 10:45 pm on November 9, 2010. Holm's vehicle veered into the southbound lane and onto the sidewalk on the southbound side of Brooks Street. Three men, including Brian Beaver (Beaver), were walking together on the sidewalk. Holm's vehicle hit Beaver from behind. The force from the vehicle threw Beaver into the side of a building. Holm's vehicle crashed into a light post approximately 50 feet past where his vehicle had hit Beaver. Emergency responders took Beaver to Community Hospital where he died from severe blunt force trauma to his head.

2

¶6     Police Officers William Tucker and Patrick Erbacher responded to the accident scene. Officer Tucker spoke with Holm. Holm's speech was slurred, his eyes were bloodshot, and Officer Tucker smelled the odor of alcohol on Holm's breath. Officer Tucker evaluated the accident scene. The roads were clear and dry. Officer Erbacher looked for skid marks that would indicate that Holm had tried to stop his vehicle. Officer Erbacher found no skid marks. Police Detective J.C. Denton conducted an investigation at the accident scene. Detective Denton found liquid in a to-go cup in Holm's vehicle that contained 6% alcohol concentration. Holm later admitted that the to-go cup contained Black Velvet and Coke.

¶7     Emergency responders took Holm to St. Patrick's Hospital. Officer Tucker administered an HGN test on Holm at the hospital. Holm received the maximum score of six. This score indicated that Holm was under the influence of alcohol. Officer Tucker then received Holm's consent to conduct a blood draw. The blood draw revealed that Holm had a blood alcohol content of 0.1. Holm also had 0.14 milligrams of Ambien in his blood. Ambien is a prescription sleep aid.

¶8     A forensic toxicologist, Sara Hansen (Hansen), testified at Holm's trial that 0.14 milligrams falls within the therapeutic range for Ambien. She further testified that a person with that quantity of Ambien in their system could fall asleep while driving. Ambien contains a warning label that a person should not take it with alcohol. Hansen testified that alcohol combined with Ambien would increase a person's impairment.

¶9     Holm also had two other drugs in his blood. Holm had 0.14 milligrams of an antidepressant, Venlafaxine, in his blood. Hansen testified that a person generally should not

3

take antidepressants with alcohol because they can cause greater impairment in a person than alcohol alone. Holm also had 0.02 milligrams of Hydrocodone, a narcotic painkiller, in his blood. Hansen testified that 0.02 milligrams falls below the therapeutic level, but still represents a sufficient quantity to affect a person. She added that combining these three drugs with alcohol could cause more impairment than each one individually.

¶10 Holm initially stated at the hospital that he did not remember the accident. He later claimed that three men had run in front of his car near the main entrance to Southgate Mall, by Denny's Restaurant, which caused Holm to lose control of the vehicle and crash. The accident actually occurred near a different entrance to Southgate Mall. Holm eventually admitted that he had heard someone mention that the accident had occurred by the entrance to Southgate Mall. He had presumed that the accident had occurred near the main entrance.

¶11 Holm also admitted that he did not remember seeing anyone crossing the street. Holm claimed that he had been "speculating" and trying to "figure out what had happened." Holm also admitted that it was possible he had fallen asleep or passed out while driving. Holm testified at trial, however, that he had swerved to avoid a collision with a vehicle that had been traveling toward Holm in Holm's lane. Holm claimed that he did not initially remember this other vehicle because he suffered from trauma-induced amnesia.

¶12 Holm was assigned a public defender, Scott Spencer (Spencer). Eight days before Holm's trial, on July 26, 2011, Holm appeared in court with Spencer and a separate attorney, Richard Buley. Buley told the District Court that Holm had contacted him and asked him to represent Holm. Buley requested a continuance so he could have more than eight days to

4

prepare. Buley stated that he would file a substitution of counsel form if the court granted the continuance. The District Court expressed concern that Holm was attempting to delay the trial. The District Court denied Holm's motion for a continuance.

¶13 Holm provided the District Court with a pro se motion for appointment of different counsel and a request for a continuance three days later. Five days remained before the trial. Holm claimed that Spencer's representation was deficient. The District Court held an initial inquiry into Holm's claim of ineffective assistance of counsel on the day before the trial. The court determined that Spencer was providing adequate representation and denied Holm's request for substitution of counsel.

¶14 The court also considered whether to grant a continuance so that Holm could retain private counsel. The State argued that Holm merely was attempting to delay the trial. The State pointed out that Holm's accident had occurred in November 2010. The trial initially had been set for April 13, 2011, but Holm had filed a motion to continue the trial. The court rescheduled the trial for August 3, 2011, pursuant to Holm's motion. The State further argued that Holm had filed a motion to continue on July 8, 2011, on the basis of medical issues. Holm sought to continue the trial until November. Holm withdrew this second motion to continue during the hearing to consider that motion on July 19, 2011. The State noted that Holm had not sought substitute counsel as part of his July 8, 2011, motion to continue or his July 19, 2011, withdrawal of the motion to continue.

¶15 The court agreed with the State that it appeared Holm merely was attempting to delay the trial. The court noted that Holm should have been preparing for the August 2011 trial

5

since November 2010. The court further noted that Holm previously had received a continuance in the trial, from April 2011 to August 2011. The court determined that Holm had failed to show diligence, and, therefore, denied Holm's motion to continue.

## STANDARD OF REVIEW

¶16 We review for abuse of discretion a district court's denial of a request for appointment of new counsel. *State v. Dethman*, 2010 MT 268, ¶ 11, 358 Mont. 384, 245 P.3d 30. We review for abuse of discretion a district court's denial of a request for a continuance. *State v. Garcia*, 2003 MT 211, ¶ 10, 317 Mont. 73, 75 P.3d 313.

## DISCUSSION

¶17 *Whether the District Court abused its discretion by finding that Holm's counsel was providing effective assistance of counsel?*

¶18 Criminal defendants enjoy a fundamental right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24; *Dethman*, ¶ 15. The Sixth Amendment to the United States Constitution entitles indigent defendants to representation by appointed counsel paid for by the public. *Gideon v. Wainwright*, 372 U.S. 335, 342-45, 83 S. Ct. 792, 795-97 (1963); *Dethman*, ¶ 15. The right to effective assistance of counsel, however, does not grant defendants a right to counsel of their choice. An indigent defendant possesses no right to demand substitution of counsel provided that the appointed counsel has been providing effective assistance. *Dethman*, ¶ 15.

¶19 The trial court must make an "adequate initial inquiry" as to whether the defendant's allegations are "seemingly substantial" when a defendant complains that his appointed

6

counsel has been providing ineffective assistance. *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371. The trial court considers the defendant's factual complaints and any explanation by the defendant's counsel during this initial inquiry. *Gallagher*, ¶ 15. The trial court must hold a hearing to address the validity of these complaints if the court determines that the defendant has presented a "seemingly substantial" complaint about inadequate counsel. *Gallagher*, ¶ 15. The court does not need to make any further inquiry, however, if the court instead determines that the defendant has failed to present a "seemingly substantial" complaint. *Gallagher*, ¶ 15.

¶20 Holm's motion detailed various claims of ineffective assistance of counsel. Holm argued that Spencer had failed to interview any witnesses and had not subpoenaed any witnesses. Holm claimed that Spencer needed to retain experts to testify as to Holm's blood alcohol content and the effect of the presence of prescription drugs in Holm's blood. Holm also claimed that Spencer should have retained an accident reconstruction expert to testify about the possibility that Holm had swerved to avoid a head-on collision with a vehicle traveling the wrong direction in Holm's lane. Holm did not immediately tell the police about his claim that another vehicle allegedly had been traveling the wrong direction in Holm's lane. Holm argued that Spencer should have retained an expert to testify about trauma-induced amnesia. This expert apparently would have explained to the jury how Holm could have forgotten about this vehicle traveling in his lane.

¶21 We first evaluate whether the trial court made an adequate inquiry into the defendant's claims, not whether the defendant's counsel actually had been ineffective.

7

*Gallagher*, ¶ 14. The court repeated Holm's concerns to Spencer and asked Spencer to respond. Spencer noted that the court had not given him a *Gillham* order that would permit Spencer to reveal confidential information. *See In re Gillham*, 216 Mont. 279, 704 P.2d 1019 (1985). Spencer further believed that it was in Holm's best interests to respond without specific details in order to avoid revealing Spencer's trial strategy. Spencer indicated that he had interviewed multiple witnesses. Spencer admitted that he had not subpoenaed any witnesses. Spencer explained, however, that only a limited number of fact witnesses existed in the case and the State already had subpoenaed all of them. Spencer noted that he could call any of the subpoenaed witnesses even if the State did not.

¶22 Spencer further indicated that he had made a strategic decision about expert witnesses. Spencer had discussed the decision whether to call experts with other lawyers in his office. He also stated that he had talked with his investigator about whether to present expert testimony. Spencer claimed that he had made his decision not to present expert testimony after these consultations. The District Court conducted an adequate initial inquiry. The record reflects that the District Court possessed sufficient information to determine accurately whether Holm had raised substantial complaints. *See Gallagher*, ¶ 22.

¶23 We now must consider whether the District Court abused its discretion in determining that Holm's complaints were not "seemingly substantial." *See Gallagher*, ¶ 23. The defendant in *Dethman* described his disagreements with his public defender's trial strategy during his initial inquiry before the trial court. Dethman claimed that his public defender refused to present witnesses, testimony, and evidence that Dethman requested. *Dethman*, ¶

8

19. We deemed insubstantial Dethman's complaints about his public defender's trial strategy in light of the "time-honored rule that courts must accord great deference to defense counsel's exercise of judgment in determining appropriate defenses and trial strategy." *Dethman*, ¶ 19 (internal quotations omitted).

¶24 Holm points to omissions that Spencer made during his trial to support his pre-trial ineffective assistance of counsel claim. We consider Holm's pre-trial ineffective assistance of counsel claim, however, using only the information available to the District Court at the time that it made its determination. *See Gallagher*, ¶¶ 14-15. Further, we do not have a record of the reasons for Spencer's alleged omissions at trial. These non-record-based trial issues must be addressed first in a post-conviction relief hearing rather than on direct appeal. *State v. Bateman*, 2004 MT 281, ¶ 23, 323 Mont. 280, 99 P.3d 656.

¶25 Holm, like Dethman, alleged that his counsel's trial strategy had been inadequate. Holm claimed that Spencer had subpoenaed no witnesses. The State had subpoenaed all of the potential fact witnesses in the case. Spencer could call any of them at trial. Holm claimed that Spencer should have hired expert witnesses to testify about Holm's blood alcohol content, the prescription drugs present in Holm's blood, and trauma-induced amnesia. Spencer opted not to retain any expert witnesses. Spencer made this decision after he had consulted with an investigator and other lawyers in his office. The District Court did not abuse its discretion in determining that Holm's complaints about Spencer's trial strategy were not seemingly substantial and that an additional hearing was unnecessary. *See Dethman*, ¶ 19.

9

¶26     *Whether the District Court abused its discretion by failing to grant a continuance eight days before trial to allow Holm to retain private counsel?*

¶27     We recognized in *Garcia* that the right to effective assistance of counsel encompasses the right to retain counsel of one's own choosing. *Garcia*, ¶ 12. A defendant with appointed counsel can insist upon the appointment of new counsel only if the appointed counsel has not been providing effective assistance. *Garcia*, ¶ 13. If a defendant seeks to retain counsel, however, the defendant need not show that his current counsel has been providing ineffective assistance. *Garcia*, ¶ 13.

¶28     A district court must consider a motion for continuance, including a motion for continuance to allow a defendant to retain counsel, in light of the diligence shown by the moving party. Section 46-13-202(3), MCA; *Garcia*, ¶ 14. The court should consider both the defendant's and the State's right to a speedy trial. Section 46-13-202(3), MCA. The court may grant the continuance, in its discretion, if the interests of justice so require. Section 46-13-202, MCA; *Garcia*, ¶ 14.

¶29     If the district court abused its discretion in denying a motion for continuance, we generally look to whether the defendant was prejudiced by the erroneous ruling. *Garcia*, ¶ 38. If the district court's erroneous ruling prevented the defendant from retaining private counsel, however, we presume prejudice. *Garcia*, ¶ 38. The deprivation of the right to retain private counsel of a party's choice represents a structural error that requires automatic reversal. *Garcia*, ¶¶ 38-39.

¶30 We considered in *Garcia* whether Garcia had made a good faith, diligent effort to retain substitute counsel before the scheduled trial date. Garcia had been in contact with substitute counsel for two months. Garcia had been trying to acquire the money to retain the substitute counsel. The substitute counsel appeared before the court seventeen days before trial to request a continuance so that he could prepare to represent Garcia. *Garcia*, ¶ 22. Garcia previously had not requested any continuances. The fact that this was Garcia's first request for a continuance indicated that Garcia was not merely attempting to delay the trial. *Garcia*, ¶ 22. Further, Garcia had been working to hire this replacement counsel for several months. *Garcia*, ¶ 21. We determined that Garcia had acted diligently. *Garcia*, ¶ 23.

¶31 Garcia's diligent behavior contrasted with the behavior of a defendant from a California case. *Garcia*, ¶ 20. The California defendant previously had sought and had obtained numerous continuances from the court. Further, the defendant had not indicated previously to the court any reason existed to change counsel. *Garcia*, ¶ 20.

¶32 We determined in *In re Mental Health of T.M.*, 2004 MT 221, ¶ 36, 322 Mont. 394, 96 P.3d 1147, that the district court had not abused its discretion by denying a continuance on the day of trial so that the defendant could retain private counsel. "[A] request for continuance to obtain counsel is dubious and fraught with uncertainties and contingencies" unless a defendant has made a good faith effort to hire private counsel before the scheduled trial date. *T.M.*, ¶ 36. T.M. had not alerted the court that he wanted private counsel until the day of the trial. Further, T.M. had not contacted any private counsel at that point. He sought

11

the continuance so that he would have the opportunity to find private counsel willing to represent him. *T.M.*, ¶ 35.

¶33 The defendant in *State v. Klemann*, 194 Mont. 117, 118-19, 634 P.2d 632, 633-34 (1981), informed the court on the morning of the trial that he wanted to retain private counsel due to his unhappiness with his court-appointed counsel. The case previously had been set for trial three separate times. *Klemann*, 194 Mont. at 118, 634 P.2d at 633. The State had brought the victim from California to testify at the trial. *Klemann*, 194 Mont. at 119, 634 P.2d at 634. The defendant had failed to show diligence in seeking private counsel. The fact that the case previously had been set for trial should have brought into focus the defendant's concerns about his court-appointed counsel. *Klemann*, 194 Mont. at 120, 634 P.2d at 634.

¶34 Holm claimed that he had delayed retaining private counsel because he had been waiting for information about the exact time that the hospital nurse had drawn blood from Holm after the accident. The officer who requested the blood draw had failed to include the time of the blood draw in his paperwork. The nurse recorded the time of the blood draw on the blood sample vial. The State eventually subpoenaed the crime lab to photograph the blood sample vial. Holm finally learned the time of the blood draw four days before trial. Holm's counsel, Spencer, told the court that this delay did not hinder Holm's defense in any way. Spencer told the court he could not explain exactly why this delay did not hurt Holm's defense without betraying his confidential conversations with Holm.

¶35 The District Court denied Holm's motion for a continuance due to its determination that Holm had lacked diligence in seeking private counsel. The court determined that the

delay in determining the exact time of the blood draw was not sufficient justification for Holm's failure to seek out replacement counsel earlier. Holm had nine months to prepare for his trial. The trial previously had been scheduled for April 2011, but the court had granted Holm's motion to continue the trial until August 2011. This previous trial date should have brought into focus Holm's desire to retain private counsel. *See Klemann*, 194 Mont. at 120, 634 P.2d at 634.

¶36 Holm also had sought a continuance on July 8, 2011, for medical reasons, and then withdrew the request on July 19, 2011. Holm had failed to inform the court previously that he was attempting to retain private counsel. Holm never mentioned any desire to retain private counsel when he sought a continuance on July 8, 2011. Holm likewise failed to express any desire to retain private counsel when Holm withdrew the continuance request on July 19, 2011. Holm finally contacted the private replacement attorney only twelve days before trial, on July 22, 2011. Holm sought a continuance from the court to retain replacement counsel only eight days before trial, on July 26, 2011. The State already had made arrangements to bring a witness from Alaska to testify at Holm's trial. *See Klemann*, 194 Mont. at 119, 634 P.2d at 634. The victim's family also had already made arrangements to travel from Washington in order to watch the trial.

¶37 The evidence in the record leads us to conclude that the District Court did not abuse its discretion in determining that Holm had not made a good faith, diligent effort to retain substitute counsel.

¶38 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT