Justice Laurie McKinnon delivered the Opinion of the Court.
***249 ¶1 Todd Michael Johnson (Johnson) appeals from a criminal conviction in the Thirteenth Judicial District Court, Yellowstone County, arguing the court abused its discretion by denying his request for substitution of counsel. We affirm and address the following issue on appeal:
***250 Did the District Court abuse its discretion by not substituting the defendant's counsel?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 In September 2014, the State charged Johnson, an indigent defendant, with felony aggravated assault. The District Court initially appointed attorney Michael Usleber to represent Johnson, but appointed substitute counsel John Hud in April 2015. Johnson's felony aggravated assault charge was one of multiple pending criminal cases against him, and Hud represented Johnson in each. Johnson consistently indicated he would not waive his speedy trial rights and objected to continuance requests. The court held a trial in one of Johnson's cases in June 2015, at which Hud represented Johnson.
¶3 The court scheduled Johnson's felony aggravated assault trial for August 13, 2015. In July 2015, Hud suffered a serious leg injury that rendered him unavailable for Johnson's scheduled trial. The court continued the trial and, on August 14, 2015, held a status hearing to discuss Johnson's representation. David Duke, regional manager of the public defender's office, appeared on Johnson's behalf and reported that Hud was unavailable until October. Duke further explained that Hud told him "that Mr. Johnson has concerns and criticisms of [Hud] and his representation." Duke stated he would defer to the court regarding whether Johnson should receive new counsel.
¶4 The court asked for Johnson's input. Johnson stated he told both Usleber and Hud that he opposed postponing his trial dates. He further reported that he had been trying, unsuccessfully, to get ahold of Hud for the last two months, stating that Hud did not respond to Johnson's phone calls or letters. Johnson stated he did not know what was going on in any of his cases. Regarding Duke's comment that Johnson had concerns with Hud's representation, Johnson stated he had not expressed any concerns about Hud's representation and assumed Hud was "putting words in [his] mouth."
¶5 The court told Johnson that it did not want to interfere with his representation but had noticed certain body language between Hud and Johnson at Johnson's last trial. The court stated that, if Johnson continued with Hud as his attorney, nothing could happen until October. The court similarly noted that, if substitute counsel were appointed, it would likely take that person until October to catch up with the case. The court then looked at its schedule and discussed its upcoming trials. Johnson further explained his concerns to the court:
*67 Your Honor, I don't ... want to do anything that would cause me to inadvertently waive my right to a fast and speedy trial.... I've ***251 been trying to get my attorney to file for a motion to dismiss for lack of speedy trial and he['s] ... refusing to do so.... [I]t's caused some great concern to me that ... the last two attorneys I've had are refusing to file motions that I've asked them to file. And it seems like they're doing a pretty good job of prolonging my situation after I've asked them numerous times not to do so. At this point, I have no idea what to do. They don't listen to anything I'm saying.... I don't even know if it would help my situation to get new counsel.... I honestly don't know what to do.
¶6 After listening to Johnson's concerns, the court described its schedule to Johnson, explaining that criminal trials rotate on six-week cycles with each judge having two designated weeks. The court determined October 19th was the soonest it could realistically reset Johnson's trial. Johnson clarified which case would be going to trial and expressed frustration because, in the past, he did not know which case was going to trial. Johnson ultimately maintained Hud as counsel and the District Court reset trial for October 19th.
¶7 On October 19, 2015, Hud appeared with Johnson for the scheduled jury trial. During pretrial discussions, Johnson asked to address the court. Without the State present, Johnson expressed his dissatisfaction with Hud's representation and requested the court appoint substitute counsel:
Your Honor, at this time I think it would be unfair for me to proceed with this trial with Mr. Hud as my defense counsel as he has failed to perform his duties as an attorney. He hasn't filed any pretrial motions I've asked or conducted any interviews with witnesses in this matter. He has seen me less than two times ... with each visit lasting less than an hour, and he has even gone to the point of changing his number to avoid me.
I have with my supporting documents ... to support my claim that Mr. Hud has failed me as an effective defense attorney either due to incompetence or an unimaginable case load, which is neither my fault. I would ask at this time that these proceedings be postponed until a later date for good cause shown and during which time Mr. Hud is removed as my counsel of record and I be given a new attorney or given a second chair so that I may retain my Sixth Amendment right to effective assistance of counsel, Your Honor.
¶8 Following Johnson's complaints, the District Court asked Hud if he had any comments. Hud stated that some of what Johnson said was accurate while some was not, but that he was not certain to what extent he should respond. The court responded by reviewing Johnson's ***252 representation in the case. In April 2015, the court substituted Usleber, the attorney it initially appointed Johnson, with Hud. In August 2015, Johnson complained about Hud's representation but ultimately decided to proceed to trial with Hud as his counsel. The court pointed out the fact that the August conversation occurred months ago, but Johnson was renewing his complaints "minutes before we're going to start the trial."
¶9 The court then denied Johnson's request and told Johnson that he could either go to trial with Hud as his attorney or represent himself. The court also mentioned that it was not too late to discuss a plea agreement. Johnson responded that the only plea agreement Hud told him about was out-of-date. Hud then more specifically responded to Johnson's allegations. He stated that he had not changed his phone number and did not know why Johnson believed he had. He further stated that he had explained to Johnson that he has an obligation to not file frivolous motions. He explained that two Fridays ago he had a heated, almost two-hour long meeting with Johnson. He further explained that their last meeting was cut short when Johnson stormed out of the meeting, angry with Hud. Hud reported that Johnson provided him with the names of two witnesses, both of whom Hud spoke with.
¶10 The District Court reiterated its earlier ruling denying Johnson's request for substitute counsel: "Okay. Well, it's 9 o'clock, it's time for trial, so any motion regarding new *68 counsel is denied. So let's go out there." Hud then asked Johnson if Johnson wanted to represent himself, and the court stated, "My impression from you was that you were not going to represent yourself; is that correct?" Johnson replied, "That's correct, Your Honor," and the case proceed to trial at which Hud represented Johnson. The jury found Johnson guilty of felony aggravated assault.
¶11 On February 29, 2016, the parties convened for sentencing, at which time Hud advised the court that Johnson had filed a formal complaint against him. Hud thought it was inappropriate for him to continue to represent Johnson but that the public defender's office was reluctant to assign new counsel so late in the case except for the purposes of filing an appeal. Hud stated that he tried to discuss Johnson's presentence investigation report with Johnson, but it "got to the point that our communication has totally broken down, and I don't think I should be representing him at this sentencing hearing." Hud continued, "I don't think I can elaborate any more on that, certainly not with prosecutors in the courtroom, but to say the least, things got very heated."
***253 ¶12 The court excused everyone except for Hud and Johnson and then asked Johnson to explain the situation to the court. After a dialogue between the District Court, Johnson, and Hud, the court decided to appoint Johnson a new attorney and continued the sentencing hearing. Johnson was later sentenced to twenty years' incarceration. He now appeals, arguing the District Court abused its discretion when it denied his October 19th request for substitute counsel.
STANDARD OF REVIEW
¶13 A request to substitute counsel is within the sound discretion of the district court, reviewed for an abuse of discretion. State v. Aguado , 2017 MT 54, ¶ 8, 387 Mont. 1, 390 P.3d 628 ; State v. Cheetham , 2016 MT 151, ¶ 13, 384 Mont. 1, 373 P.3d 45. A district court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. Cheetham , ¶ 13.
DISCUSSION
¶14 The United States Constitution and the Montana Constitution guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI ; Mont. Const. art. II, § 24. The right to effective assistance of counsel does not, however, grant a defendant the right to counsel of his choice. State v. Dethman , 2010 MT 268, ¶ 15, 358 Mont. 384, 245 P.3d 30. A defendant may not demand substitute counsel simply because he lacks confidence in, or does not approve of, his counsel; he only has the right to substitute counsel in a few instances. Cheetham , ¶ 18 (citing Dethman , ¶ 15 ).
¶15 We have previously explained that, to obtain substitute counsel, the defendant must present material facts establishing either: (1) a complete collapse of the attorney-client relationship; (2) a total lack of communication between defendant and counsel; or (3) ineffective assistance of counsel. Aguado , ¶ 24 (citing Cheetham , ¶ 19 ; State v. Edwards , 2011 MT 210, ¶ 32, 361 Mont. 478, 260 P.3d 396 ; State v. Kaske , 2002 MT 106, ¶ 30, 309 Mont. 445, 47 P.3d 824 ). Our inclusion of ineffective assistance of counsel as a means by which a defendant may obtain substitute counsel has, however, led to confusing precedent and created a difficult standard for trial courts to follow. In prior cases, while repeatedly noting that most ineffective assistance of counsel claims are best suited for resolution on direct appeal or in postconviction proceedings, we continued to state that ineffective assistance of counsel is a legitimate basis upon which to grant a ***254 defendant's substitution request. Compare Aguado , ¶ 24 ("[T]o obtain substitution of counsel, the defendant bears the burden of proving ... ineffective assistance of counsel." (internal quotations and citations omitted)), with Aguado , ¶ 25 ("The appropriate time for an evaluation of the merits of an ineffectiveness claim is either on direct appeal ... or in a postconviction proceeding...."); compare Cheetham , ¶ 19 ("[T]o replace a defense attorney, the defendant bears the burden of presenting material facts that establish ... ineffective assistance of counsel."), with Cheetham , ¶ 29 ("A claim of ineffective assistance based on differences between the defendant *69 and his counsel about trial strategy and production of evidence is available in, and better suited for, a postconviction proceeding....").
¶16 However, allowing a defendant to obtain substitute counsel based on a general ineffective assistance of counsel claim wrongly suggests that a district court may, mid-trial, question specific defense tactics and inquire into matters such as counsel's trial strategy. See Kaske , ¶ 33 (noting a defendant does not have a right to a particular defense and reiterating the "time-honored rule" that courts must give great deference to defense counsel's judgment); but see Cheetham , ¶ 29 ("A claim of ineffective assistance based on differences between the defendant and his counsel about trial strategy and production of evidence is available in, and better suited for, a postconviction proceeding...." (emphasis added)). It essentially requires a trial court to hold a collateral ineffective assistance of counsel proceeding during the pendency of a trial, injecting Strickland -like standards[1] but also not requiring a full two-pronged inquiry. See, e.g. , Aguado , ¶ 25 (explaining that a district court's inquiry into a defendant's substitution request "should not become Strickland litigation"). It further produces confusion regarding when a court should issue a Gillham order.[2] Aguado , ¶¶ 14, 25 (trial court issued a Gillham order ***255 permitting counsel to respond to the defendant's substitution request but, on appeal, this Court explained that, while the trial court must examine the sufficiency of the defendant's complaints, its inquiry should not necessitate the issuance of a Gillham order); Cheetham , ¶ 29 (stating that Gillham orders apply to petitions for postconviction relief). We take this opportunity to enunciate a clearer standard for substitution of counsel, one that will remove the existing confusion by properly differentiating between an ineffective assistance of counsel claim, most appropriately raised on direct appeal (if record based) or in a postconviction proceeding, and the appropriate circumstances in which to grant a defendant's substitution request, raised during the pendency of trial.
¶17 A defendant's right to substitute counsel is founded in the defendant's constitutional right to the effective assistance of counsel. U.S. Const. amend. VI ; Mont. Const. art. II, § 24 ; see United States v. Smith , 640 F.3d 580, 588 (4th Cir. 2011). While a defendant is not entitled to counsel of his choice or even to a meaningful relationship with counsel, he is constitutionally entitled to counsel with whom he may mount an adequate defense. United States v. Cronic , 466 U.S. 648, 656-57, 104 S. Ct. 2039, 2045-46, 80 L.Ed.2d 657 (1984) ; Morris v. Slappy , 461 U.S. 1, 14, 103 S. Ct. 1610, 1617, 75 L.Ed.2d 610 (1983) ; Smith , 640 F.3d at 588. "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman ... requires the guiding hand of counsel at every step in the proceedings against him." Powell v. Alabama , 287 U.S. 45, 68-69, 53 S. Ct. 55, 64, 77 L.Ed. 158 (1932).
¶18 When communication between counsel and defendant becomes so compromised that mounting a defense is impossible, the defendant is neither being heard by counsel nor receiving effective assistance. Accordingly, the defendant's right to substitute counsel arises only when a breakdown of the attorney-client relationship becomes so great that the principal purpose of the appointment-to provide the defendant with the effective assistance of counsel-is frustrated. Smith , 640 F.3d at 588 ("[T]he defendant's Sixth Amendment right to successor appointed counsel arises because the initial appointment has ceased to constitute Sixth Amendment assistance of counsel."). In such instances, the defendant is constructively denied *70 his constitutional right to effective assistance of counsel and the trial court must grant his request for substitute counsel. See Daniels v. Woodford , 428 F.3d 1181, 1196-98 (9th Cir. 2005) (explaining the constructive denial of counsel doctrine in the context of a defendant's request for substitute ***256 counsel).
¶19 Because the defendant's constitutional right to substitute counsel arises when his relationship with appointed counsel breaks down to the point where the appointment ceases to constitute the effective assistance of counsel, we must identify the circumstances in which the attorney-client relationship presumptively falls short of the one constitutionally required. See State v. Gallagher , 2001 MT 39, ¶ 9, 304 Mont. 215, 19 P.3d 817 ( Gallagher II ) (recognizing that when conflict between attorney and defendant becomes so great as to result in a total lack of communication, the court's refusal to substitute counsel violates the defendant's right to effective assistance of counsel). Based on the foregoing analysis, our prior case law focusing on the alleged conflict between counsel and defendant, and looking to other jurisdictions for guidance, we conclude a defendant is entitled to substitute counsel if he presents material facts showing good cause for the substitution as demonstrated by: (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant. See, e.g. , United States v. Jones , 795 F.3d 791, 796 (8th Cir. 2015) ; United States v. Sullivan , 431 F.3d 976, 979-80 (6th Cir. 2005) ; United States v. Swinney , 970 F.2d 494, 499 (8th Cir. 1992) ; McKee v. Harris , 649 F.2d 927, 931 (2d Cir. 1981). A defendant is not entitled to substitute counsel based on a general claim of ineffective assistance of counsel, and we overrule our prior case law only to the extent it states as much.[3]
¶20 The trial court must focus its inquiry on the alleged conflict or breakdown and determine whether the defendant demonstrated good cause justifying substitute counsel. See, e.g. , Jones , 795 F.3d at 796-98 ; Smith , 640 F.3d at 589-91 ; United States v. Reyes-Bosque , 596 F.3d 1017, 1034 (9th Cir. 2010) ; Sullivan , 431 F.3d at 979-80 ;
***257 United States v. Nguyen , 262 F.3d 998, 1003-04 (9th Cir. 2001) ; United States v. Moore , 159 F.3d 1154, 1158-60 (9th Cir. 1998). Disagreement between counsel and defendant over matters such as defense tactics and trial strategy-issues potentially relevant to an ineffective assistance of counsel claim-could certainly lead to an irreconcilable conflict or complete breakdown in communication, justifying substitute counsel. To avoid confusion, the trial court's inquiry into a defendant's substitution request should focus not on specific disagreements between counsel and defendant regarding trial strategy or on whether defense counsel's chosen techniques are effective, but instead should focus on whether the defendant presented material facts showing good cause for his substitution request as demonstrated by: (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant. The court's focus on the alleged conflict or breakdown between counsel and defendant permits the court to adequately inquire into the defendant's substitution request while only examining issues protected by the attorney-client privilege to the degree those issues resulted in an actual conflict, irreconcilable conflict, or complete breakdown in communication. See Cronic , 466 U.S. at 659-60, 104 S. Ct. at 2047 (commenting that, in some circumstances, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could *71 provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial " (emphasis added)).
¶21 While we set forth a new standard warranting substitute counsel, we retain our precedent requiring the trial court to perform an "adequate initial inquiry" to determine whether the defendant's complaints are "seemingly substantial" when considering a defendant's request for substitute counsel. See, e.g. , Cheetham , ¶ 20 ; State v. Gallagher , 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371 ( Gallagher I ); see also Smith , 640 F.3d at 594 (explaining that "the judge has an obligation to inquire thoroughly into the factual basis of defendant's dissatisfaction" with counsel (internal quotations and citations omitted)). A district court's inquiry is inadequate if the court fails to conduct "even a cursory inquiry into the defendant's complaints," in which case we remand for further proceedings. Gallagher I , ¶ 15 (internal quotations omitted).
¶22 A district court's inquiry is adequate if it considers a defendant's factual complaints together with counsel's specific explanations addressing the complaints.
***258 State v. Schowengerdt , 2015 MT 133, ¶ 17, 379 Mont. 182, 348 P.3d 664 ; Dethman , ¶ 16 ; Gallagher I , ¶ 15 ; City of Billings v. Smith , 281 Mont. 133, 136-37, 932 P.2d 1058, 1060 (1997). If the district court performs an adequate initial inquiry and determines the defendant's complaints are not seemingly substantial, the court does not need to conduct a hearing to address the complaint. Gallagher I , ¶ 15. However, if the district court determines the defendant's complaint is seemingly substantial, the court must conduct a hearing to address the complaint's validity. State v. Happel , 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016. The trial court should subsequently grant the defendant's substitution motion if the defendant presents material facts showing good cause for his request as demonstrated by: (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant.
¶23 In making its decision, the court should consider the circumstances surrounding the defendant's substitution motion, including the timeliness of the motion and the degree to which the conflict prevented the mounting of an adequate defense. See, e.g. , Daniels , 428 F.3d at 1197-98 ; United States v. Whaley , 788 F.2d 581, 583 (9th Cir. 1986). As to timeliness, the court may consider "whether the conflict complained of is genuine or merely a transparent plot to bring about delay." Smith , 640 F.3d at 591 (internal quotations and citations omitted). If the defendant's substitution request is nothing more than a dilatory tactic, the trial court is well within its discretion to deny the request. In analyzing the degree to which the conflict between counsel and defendant prevented the mounting of an adequate defense, the defendant must demonstrate more than his feeling that his communication with counsel is unsatisfactory. See Sullivan , 431 F.3d at 981. Instead, the defendant must present material facts showing that the attorney-client relationship has deteriorated to the point where the irreconcilable conflict or breakdown in communication prevents the mounting of an adequate defense. See Sullivan , 431 F.3d at 981.
¶24 Having set forth a new standard to determine whether a defendant is entitled to substitute counsel, we turn to the facts of this case. The District Court listened to Johnson's complaints about Hud but did not conduct a hearing to assess the complaints' validity before denying Johnson's request for substitute counsel. Johnson raises alternative arguments on appeal. First, he contends the District Court abused its discretion by not conducting an adequate initial inquiry into ***259 Johnson's request for substitute counsel on the morning of trial. If this Court finds the District Court's initial inquiry adequate, Johnson alternatively argues the court abused its discretion by not finding Johnson's complaints seemingly substantial enough to justify a hearing. The State counters that the District Court conducted an adequate initial inquiry and did not abuse its discretion by determining that Johnson's complaints did not necessitate a hearing to address their validity. *72 ¶25 We conclude the District Court performed an adequate initial inquiry. A court's initial inquiry is adequate when it critically analyzes the defendant's factual allegations together with counsel's specific explanations. Aguado , ¶ 23. On the morning of October 19, 2015, the court allowed Johnson to express his concerns with Hud's representation. Johnson complained that Hud did not file pretrial motions Johnson requested, did not conduct any interviews with witnesses, visited Johnson "less than two times," and changed his phone number to avoid Johnson. Hud later explained that he told Johnson that he could not file frivolous motions, spoke with the two witnesses Johnson had provided him, visited with Johnson for almost two hours on one occasion but Johnson cut their second meeting short, and had not changed his phone number and did not know why Johnson believed he had.
¶26 The District Court listened to Johnson's factual allegations, noted that it had already substituted Johnson's counsel once before, and reviewed the August conversation regarding Hud's representation of Johnson. Before denying Johnson's request, the court expressed frustration with the fact that the August conversation occurred months ago and that Johnson was renewing his complaints only minutes before trial. The record demonstrates that the court critically analyzed Johnson's factual allegations together with Hud's specific explanations. We accordingly hold that the District Court performed an adequate initial inquiry.
¶27 We further conclude the District Court did not abuse its discretion when it did not hold a hearing to address the validity of Johnson's complaints. The court must conduct a hearing to address the defendant's complaints if the complaints are seemingly substantial. Gallagher I , ¶ 15. The defendant must present a seemingly substantial complaint that his attorney has an actual conflict of interest, that he has an irreconcilable conflict with his attorney, or that his communication with his attorney has completely broken down. A defendant's complaints about his attorney's chosen trial strategy or specific defense tactics must be reserved for an ineffective assistance ***260 of counsel claim raised on direct appeal or in a postconviction proceeding.
¶28 In this case, Johnson's chief complaint was that Hud refused to file certain pretrial motions at Johnson's request. Hud responded to that complaint, generally stating that he had explained to Johnson that he could not file frivolous motions. However, Johnson's complaints regarding Hud's refusal to file certain pretrial motions are complaints about Hud's chosen trial strategy and defense tactics. Those complaints, therefore, must be reserved for an ineffective assistance of counsel claim raised on direct appeal or in a postconviction proceeding. Accordingly, Johnson's complaints regarding Hud's refusal to file pretrial motions did not support Johnson's request for substitute counsel.
¶29 Johnson also complained about his lack of communication with Hud. Specifically, Johnson alleged that Hud did not return Johnson's phone calls or letters and that Hud had visited him "less than two times" in preparation for trial. While there appears to have been some issue with the communication between Johnson and Hud, we cannot find, based on the record before us, that the District Court abused its discretion when it determined Johnson's complaints were not seemingly substantial enough to hold a hearing. The timing of Johnson's request is problematic-Johnson raised some concerns at the status hearing in August but did not renew his complaints until the morning of trial in October.
¶30 Further, Johnson's complaints do not suggest that the relationship between Johnson and Hud had deteriorated to the point where the conflict or breakdown in communication prevented the mounting of an adequate defense. There appears to have been a line of communication between the two-they met twice before trial, despite those meetings being heated. Later on at Johnson's sentencing hearing, Hud acknowledged that their communication had completely broken down since trial and the court provided Johnson with substitute counsel at that point. We conclude the District Court did not abuse its discretion when it found that Johnson's complaints were not seemingly substantial enough to justify a hearing on their validity.
*73 CONCLUSION
¶31 An indigent defendant's right to substitute counsel is founded in the defendant's federal and state constitutional rights to effective assistance of counsel. When a defendant requests substitute counsel, the court must conduct an adequate initial inquiry to determine whether the defendant's complaints are seemingly substantial. If the ***261 defendant's complaints are seemingly substantial, the court must hold a hearing to assess the validity of the defendant's complaints. The defendant is entitled to substitute counsel if he presents material facts showing good cause for the substitution as demonstrated by an actual conflict of interest, an irreconcilable conflict between counsel and the defendant, or a complete breakdown in communication between counsel and the defendant. In this case, the District Court performed an adequate initial inquiry and did not abuse its discretion when it determined Johnson did not present a seemingly substantial complaint. We accordingly affirm Johnson's conviction.
We concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.

In assessing ineffective assistance of counsel claims, Montana courts apply the United States Supreme Court's two-prong test as articulated in Strickland v. Washington , 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g. , State v. Colburn , 2018 MT 141, ¶ 21, 391 Mont. 499, 419 P.3d 1196 ; Whitlow v. State , 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861.

See In re Gillham , 216 Mont. 279, 282, 704 P.2d 1019, 1020 (1985) (explaining that, to the extent counsel must reveal confidential client information in response to a defendant's ineffective assistance of counsel claim, counsel is not "subject to disciplinary proceedings before the Commission of Practice of the State Bar of Montana, nor subject to charges of malpractice").

Except for listing ineffective assistance of counsel as a means by which a defendant may obtain substitute counsel, the legal analyses set forth in both Aguado and Cheetham are consistent with our new standard for substitute counsel. In both cases, we explained that a defendant is entitled to substitute counsel based on a claim of ineffective assistance of counsel only when there is a complete collapse in attorney-client communication or in the attorney-client relationship and emphasized that a defendant should reserve his complaints regarding matters such as trial strategy and production of evidence for an appeal or postconviction claim. Aguado , ¶ 25 ; Cheetham , ¶ 29. Our new substitution standard simply removes any remaining confusion by clarifying that every ineffective assistance of counsel claim does not warrant substitute counsel.