FILED

12/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0170

DA 24-0170

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 278N

STATE OF MONTANA,

    Plaintiff and Appellee,

  v.

KRISTOFFER CHARLES CARLIN,

    Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC-21-583
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Britt Cotter, Cotter Law Office, P.C., Polson, Montana

    For Appellee:

    Austin Knudsen, Montana Attorney General, Cori Losing, Assistant Attorney General, Helena, Montana

    Joshua A. Racki, Cascade County Attorney, Michele Levine, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  November 13, 2025

Decided:  December 2, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Kristoffer Charles Carlin (Carlin) appeals from the District Court's denial of Carlin's request for substitution of counsel. We affirm.

¶3 Carlin was charged with several felonies—Incest, Tampering With or Fabricating Physical Evidence, and 16 counts of Sexual Abuse of Children. He subsequently entered into a binding (1)(b) plea agreement,[1] in which he agreed to plead guilty to four counts of Sexual Abuse of Children in exchange for dismissal with prejudice of the remaining charges and a net sentence of 40 years to the Montana State Prison, with 20 suspended.

¶4 Prior to executing the plea agreement, Carlin met with his counsel of record, Daylon Martin, and a fellow Office of Public Defender (OPD) attorney, Matthew McKittrick, to go over the plea agreement. On July 7, 2023, Carlin appeared at his change of plea hearing. At the hearing, Carlin acknowledged he signed the plea agreement and the accompanying acknowledgement of waiver of rights. He further acknowledged he had read the plea agreement and understood it; he had discussed it with attorney Martin and again with

---

[1] This is a plea agreement pursuant to § 46-12-211(1)(b), MCA, where the agreement provides for a specific disposition. If the court accepts the plea agreement, it will be bound to follow the disposition provided for therein and if the court rejects the agreement, the defendant will be permitted the opportunity to withdraw any guilty pleas made in reliance on the plea agreement.

attorney McKittrick; and he was satisfied with his counsel. The District Court confirmed with Carlin that he should only plead guilty if in fact he was guilty and was doing so of his own free will. The District Court specifically asked Carlin whether he had been "threatened, coerced, intimidated, offered you a bribe, reward, or special treatment to get you to enter a [guilty] plea here today," to which Carlin responded, "[n]o." Carlin pled guilty to four counts of Sexual Abuse of Children and specifically admitted to his conduct that constituted each offense to which he pled guilty.

¶5     Several weeks later on August 18, 2023, Carlin sent a "kite" to the District Court stating he had fired the OPD. On September 5, 2023, attorney McKittrick formally substituted attorney Martin as Carlin's counsel. On December 5, 2023, Carlin sent an ex parte letter to the State asking the State to, in essence, re-negotiate the plea agreement, asserting his current attorney McKittrick had been aware that Carlin felt pressured by attorney Martin to enter the plea agreement. The State filed this letter with the District Court on December 14, 2023.

¶6     In response to the filed letter, the District Court set a hearing for January 26, 2024, to determine whether substitution of counsel, pursuant to the standards set forth in *State v. Johnson*, 2019 MT 34, 394 Mont. 245, 435 P.3d 64, was warranted. At the hearing, the District Court explained the hearing was to discuss whether Carlin's concerns expressed regarding his counsel warranted substitution of counsel, not to consider withdrawal of his guilty pleas. The District Court advised Carlin that if he desired to make such a request,

3

he would have to file a separate motion to withdraw his guilty pleas.[2]  At that hearing, Carlin advised the court he had previously lied to the court when he had told the court he did not feel pressured into signing the plea deal and that instead he had felt pressured by attorney Martin into signing the plea agreement and that he had brought this up with attorney McKittrick several times asking why they had not pulled this deal.  Carlin asserted he needed a substitution of counsel as Martin coerced him into pleading guilty by bringing up a recent case involving one of Carlin's friends who received a maximum sentence on the same charge and that if he did not plead guilty, he would get the maximum sentence.  Attorney McKittrick advised the court he was present during Carlin's discussion with attorney Martin regarding the plea agreement.  McKittrick characterized the conversation as one of risk versus reward, rather than coercion, noting there were risks of not accepting a plea agreement and proceeding to trial.  In Carlin's case, there was risk of being convicted of several serious offenses and the risk of receiving a harsher sentence than that provided for in the plea agreement.  McKittrick advised that neither he nor attorney Martin threatened that if Carlin did not sign the plea agreement, that they were not going to do anything for him, explaining, "[w]e always pledged to [Carlin], as we do to all of our clients, that we'll do our very best at trial."  Based on the discussion at the representation hearing, the District Court determined there was not an actual conflict or a complete breakdown in communication warranting substitution of counsel.  The District Court characterized the attorneys' discussion with Carlin as involving the risks of proceeding to

---

[2] No such motion was ever filed.

4

trial and the discussion as to sentences imposed on other similarly situated defendants versus accepting a plea agreement as commonplace, rather than coercive or constituting duress. As such, the court denied Carlin's request for substitution of counsel.

¶7 A district court's consideration of a request for substitution of counsel is reviewed for abuse of discretion. We consider whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *State v. Schowengerdt*, 2018 MT 7, ¶ 15, 390 Mont. 123, 409 P.3d 38. "We review for abuse of discretion both procedures employed by a district court during the initial inquiry into defendant's complaints and a district court's analysis of whether a defendant's claims are seemingly substantial, necessitating a further hearing[.]" *Schowengerdt*, ¶ 16 (internal citations omitted).

¶8 Carlin asserts the District Court abused its discretion by refusing to appoint substitute counsel to advise Carlin regarding withdrawal of his guilty pleas when Carlin asserted coercion created a conflict of interest with his counsel. Alternatively, Carlin asserts the District Court failed to conduct an adequate inquiry into the potential conflict of interest. The State asserts Carlin conflates his request to substitute his counsel with a motion to withdraw his guilty pleas and because he never filed a motion to withdraw his guilty pleas, his claims regarding such a motion are not before the Court. The State further asserts that Carlin's only articulated complaints were against his prior counsel Martin who he alleged to have coerced him into pleading guilty when attorney Martin told him that another defendant facing similar charges had received a more severe sentence than that provided for in Carlin's plea agreement.

5

¶9    From our review of the record, we agree with the State and find no abuse of discretion in denying Carlin's request for substitution of counsel.

¶10    We have previously set forth the requirements for district courts to consider when presented with a request for substitution of counsel:

> When investigating a defendant's request for new counsel, a district court must first conduct an "adequate initial inquiry to determine whether the defendant's claim is seemingly substantial." *State v. Happel*, 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016 (internal citations omitted); *see also State v. Weaver*, 276 Mont. 505, 511, 917 P.2d 437, 441 (1996); *City of Billings* [*v. Smith*], 281 Mont. [133,] 136, 932 P.2d [1058,] 1060. A district court conducts an adequate inquiry when it gathers information, *see* [*State v. Gallagher* (*Gallagher I*), 1998 MT 70], ¶ 22, [288 Mont. 180, 955 P.2d 1371,] analyzes the defendant's factual complaints along with counsel's specific responses, *State v. Cheetham*, 2016 MT 151, ¶ 20, 384 Mont. 1, 373 P.3d 45; [*State v.*] *Holm*, [2013 MT 58,] ¶ 19, [369 Mont. 227, 304 P.3d 365,] and "'ma[kes] some sort of critical analysis at the time the motion was filed,'" *Happel*, ¶ 14 (quoting *State v. Finley*, 276 Mont. 126, 143, 915 P.2d 208, 219 (1996) (*overruled in part on other grounds*)). During this initial inquiry, the district court need only inquire as to whether a defendant's claim is seemingly substantial, not whether it is meritorious. *Happel*, ¶ 14 (citing *State v. Gazda*, 2003 MT 350, ¶ 32, 318 Mont. 516, 82 P.3d 20). If a district court's inquiry reveals a seemingly substantial complaint, the court "must hold a hearing to address the validity of the complaints, and appoint separate counsel to represent the defendant." *Happel*, ¶ 14 (citing *Gallagher I*, ¶ 15); *Gazda*, ¶ 32.

*Schowengerdt*, ¶ 19.

> To avoid confusion, the trial court's inquiry into a defendant's substitution request should focus not on specific disagreements between counsel and defendant regarding trial strategy or on whether defense counsel's chosen techniques are effective, but instead should focus on whether the defendant presented material facts showing good cause for his substitution request as demonstrated by: (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant. The court's focus on the alleged conflict or breakdown between counsel and defendant permits the court to adequately inquire into the defendant's substitution request while only examining issues protected by the attorney-client privilege to the degree

6

those issues resulted in an actual conflict, irreconcilable conflict, or complete breakdown in communication.

*Johnson*, ¶ 12.

¶11 Here, upon Carlin raising concerns about his counsel, the District Court appropriately convened a hearing to inquire into Carlin's concerns regarding his representation. Upon inquiry by the District Court, Carlin asserted he felt pressured or coerced into signing the plea agreement because attorney Martin coerced him into pleading guilty by bringing up a recent case involving one of Carlin's friends who received a maximum sentence on the same charge and then told him that if he did not plead guilty, he would get the maximum sentence. The court then made inquiry of his current counsel as to his knowledge, if any, as to this concern. Attorney McKittrick explained to the court that he was present with attorney Martin and Carlin when they went over the plea agreement. He related they had a typical risk versus reward discussion with regard to whether to enter into the plea agreement. He explained that this type of conversation was part and parcel of a typical conversation they have with clients—a "risk versus reward analysis . . . where ultimately our clients have to weigh the benefits of the plea agreement versus the risk of going to trial[.]" They discussed that there were risks associated with going to trial when facing several serious felonies, including the risk that if Carlin was convicted at trial, he could face a harsher sentence than that provided for in the plea agreement and, by way of example, attorney Martin discussed a similarly situated defendant known to Carlin who was convicted at trial and then received a much harsher sentence than that provided for in Carlin's offered plea agreement. Although this

7

discussion may have been uncomfortable for Carlin, the District Court analyzed this discussion as a commonplace discussion designed to inform a defendant of the risks and returns associated with accepting or not accepting a plea agreement—it is lawyers ensuring their clients understand how high the stakes are. The court concluded this discussion did not create an actual conflict of interest and by implication that Carlin's concerns as to his counsel were not seemingly substantial. This discussion and the court's analysis is exactly what the District Court was required to do in assessing if there was a legal basis for substitution of counsel.

¶12    Carlin further asserts the District Court conducted no inquiry into the role of attorney Martin, but from our review of the record such is not accurate. While the District Court did not question Martin directly, the court did hear from attorney McKittrick who was present during the conversation which Carlin asserts was coercive.[3] Carlin and McKittrick similarly described the discussion of the plea agreement between Carlin and Martin including Martin's reference to a defendant known to Carlin charged with the same or similar offense had following trial conviction received a much greater sentence than that provided for in Carlin's plea agreement. Carlin's much later assertion that this was pressure or coercion is contradicted by his sworn testimony at his plea change hearing where he was fully advised of his rights and affirmatively advised the court that he understood the plea agreement which he went through with his counsel and again independently; he was satisfied with the overall services of his attorney; he was pleading

---

[3] Prior to this appeal, Carlin only asserted attorney Martin pressured or coerced him into accepting the plea agreement. He did not assert ineffective assistance of counsel at the district court hearing.

guilty because it was his decision to do so and he was not threatened, coerced, or intimidated into doing so; and his admission to engaging in specific conduct meeting the elements of each of the offenses to which he pled guilty. Although Carlin now asserts ineffective assistance of counsel created an actual conflict of interest, he failed to raise even seemingly substantial concerns, let alone set forth a prima facie showing that counsel's performance in having a risk versus reward type discussion was anything but competent representation. Carlin has shown nothing more than he would prefer to have re-negotiated a different plea deal.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY

9