DA 18-0356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 215

FILED

08/25/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0356

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

CINDI E. KHONGWISET,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC-17-179
Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            William F. Hooks, Law Office of William F. Hooks, Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Damon Martin, Assistant
            Attorney General, Helena, Montana

            Steve Eschenbacher, Lake County Attorney, Benjamin Anciaux, Deputy
            County Attorney, Polson, Montana

Submitted on Briefs:  May 27, 2020

Decided:  August 25, 2020

Filed:

                                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Cindi Khongwiset appeals following a conviction in Montana's Twentieth Judicial District Court for assault with a weapon, a felony, in violation of § 45-5-213, MCA. We affirm.

¶2    We restate the issue on appeal as follows:

*Whether the District Court conducted an adequate inquiry into Khongwiset's request to substitute counsel.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On May 6, 2017, Judith Bromley was walking along an access road from Khongwiset's neighbor's property back to her own residence. Khongwiset and her mother, Linda Eakin, confronted Bromley, telling her to get off the road. Khongwiset had a pellet gun which looked like a real gun. Bromley reported that Khongwiset threatened to shoot her. Two Lake County Sheriff's Deputies, Joel Diaz and Daniel Yonkin, arrived on the scene after a 911 call. Khongwiset admitted to Diaz and Yonkin that she had the gun, that she intended to shoot Bromley, and that the gun was loaded with a pellet.

¶4    On June 5, 2017, the State filed an Information in District Court, charging Khongwiset with assault with a weapon. The Office of the Public Defender ("OPD") assigned Jeff Wilson to be Khongwiset's counsel. On June 28, 2017, Khongwiset signed an acknowledgment of rights which stated that her attorney informed her that a lesser-included offense may apply. A note on the signed acknowledgment provides

"misdemeanor assault may be a lesser-included of Assault with a Weapon." Khongwiset's trial was set for December 4, 2017.

¶5 On September 29, 2017, the OPD filed a Notice of Substitution of Counsel, informing Khongwiset that Ashley Morigeau was replacing Wilson after the OPD granted Wilson's request for transfer to Missoula. On October 13, 2017, Khongwiset filed an unopposed motion to continue the trial to allow Morigeau adequate time to prepare. The court granted the motion and reset the trial date for March 5, 2018.

¶6 On February 6, 2018, the court held a hearing to address outstanding motions. At the beginning of the hearing, Khongwiset addressed the court directly and requested to fire Morigeau for "purposeful misrepresentation." Khongwiset stated that she had "been requesting for crucial evidence to be submitted on my behalf and other crucial evidence that is being purposefully omitted from trial, which I believe are very necessary for [the court] to see." In response, Morigeau explained to the court that Khongwiset had not wanted to meet with her that day so she was not able to tell Khongwiset that a new attorney, Sam Newton, had been assigned to her case, or discuss with Khongwiset that the evidence she wished to submit "would be more damaging to her case to enter than to not." Morigeau stated that Khongwiset disagreed with those tactical decisions, but that tactical decisions "are the attorney's decisions to make." The court agreed, stating that matters of tactics fall within the attorney's role but noted that "new counsel is going to be substituted in very soon."

¶7     Newton, Khongwiset's new substitute counsel, appeared and told the court that he would be unavailable beginning March 8, three days after trial was set to begin. Newton also explained that he would not have a problem continuing the trial date but could "get up to speed" if it needed to be tried quickly. The court confirmed with Newton that the case was set for trial on March 5 or 6. The court stated there was no motion before the court for substitution of counsel and "if the counsel to be substituted would eliminate our ability to go to trial as scheduled, I'm not—probably not going to grant the substitution. The [OPD] needs to find a different attorney rather than one that can't be at trial."

¶8     The District Court returned to the pending motions and determined that it had not heard anything to indicate it could not decide the remaining motions in limine and evidentiary issues before the court. The court also stated "if new counsel wants to present additional motions, I don't see how that can prejudice the defendant's case." Morigeau clarified that there was another trial scheduled ahead of Khongwiset's on March 5, and that if Khongwiset intended to fire her, she must make a formal complaint with the OPD, "unless the Court is prepared to hear that and make a decision on whether I shouldn't be her attorney." Morigeau explained that she did not believe it was the intention of the OPD to appoint Khongwiset a different attorney other than Newton. Morigeau also stated that she was prepared to go forward with the hearing. The District Court then turned to Khongwiset and stated it was important for "[Khongwiset] to address [the court] directly and to state any reasons that she has for requesting a different attorney."

4

¶9 Khongwiset raised several concerns about the case and Morigeau's representation. First, Khongwiset discussed an apparent issue with the pellet gun that she had in her possession, asserting that there were "property receipts and things, which have been forged and made up by another officer other than the one who discovered the physical property." Khongwiset stated that the issue was that she "can't [be] assure[d] that that's the same weapon in the same condition." The District Court clarified that the issue "goes to the admissibility of that gun and that's going to be determined by the Rules of Evidence based upon whether or not they can establish a foundation. And that's the way it's handled, regardless of who your attorney is." Khongwiset responded, "Right."

¶10 Khongwiset next explained that she believed over 30 seconds were missing from the 911 call, as well as other evidence in the record supporting the fact that she had called for an ambulance for her mother. The District Court asked: "is that something you contend that you—that should be raised but this attorney will not do that?" Khongwiset stated that she had asked Morigeau about the missing evidence. However, Khongwiset then explained that Morigeau did not discover these evidentiary issues and instead, her previous attorney, Wilson, was in the midst of preparing a presentation for the court as to the missing evidence when he was "mysteriously" transferred. The District Court explained to Khongwiset that her previous attorney had left because his request for transfer to Missoula was granted.

¶11 Khongwiset further told the court there were additional issues that her attorney had not raised, including the presence of video camera footage showing that Bromley, the victim, assaulted Khongwiset. The court asked Morigeau if requests were made to retrieve

5

the footage. Morigeau responded that she had attempted to obtain the footage, but it was erased and she did not believe there was anything further she could have done. The court asked Khongwiset if there was anything else Morigeau should have done. Khongwiset replied "I have no idea," but stated that because Morigeau believed the footage was erased, she was not going to put forth the request. Morigeau responded that she was able to produce a record of OPD's request for that footage if necessary.

¶12 The court again asked Khongwiset if she had any other issues with counsel. Khongwiset brought up a witness interview and concerns that charges were not being brought against Bromley for defamation and for making statements that directly conflicted "with everything [Bromley] has made in all of her police reports." Morigeau responded that such information was "cross-examination appropriate." The District Court agreed, acknowledging that a good attorney would be wise to use that information in cross-examination, that it is the attorney's job to decide upon a strategy for trial, and explained to Khongwiset that only a prosecutor, and not her defense attorney, could charge someone.

¶13 Khongwiset also told the court that Morigeau refused to use video evidence of the area where the alleged assault occurred. Morigeau responded that tactically, producing that evidence would not be helpful. The court noted that tactical decisions are at the attorney's discretion. Khongwiset also complained that she was never read her *Miranda* rights when she was arrested, and counsel had not raised the issue. Morigeau answered that during her first meeting with Khongwiset she told her that an arrest does not

necessarily trigger *Miranda* warnings, but is only prompted upon custodial interrogation. Because Khongwiset intended to testify at trial, Morigeau stated that she did not see the purpose of filing a suppression motion.

¶14    At the conclusion of the inquiry, the court asked Khongwiset if she had expressed all the reasons for seeking to dismiss Morigeau. Khongwiset did not raise any other reasons. The court ruled that none of the reasons raised were grounds for demanding a change in attorneys, so Khongwiset could either continue with this attorney, hire her own attorney, or represent herself.

¶15    The court proceeded with the hearing on the motions in limine and objections to the State's list of proposed witnesses and exhibits. Morigeau interrupted and asked the court to return to the "property receipt issue" regarding the pellet gun. Morigeau explained that Khongwiset raised that issue for the first time when speaking with the court and acknowledged that she never understood that she had a different property receipt other than the one that was provided to her in discovery. Morigeau said she needed to have further discussions with Khongwiset about the issue and whether it needed to be raised. After a discussion off the record, both offered conflicting perspectives regarding the two receipts as to the single pellet gun. Morigeau said it appeared each officer had issued a receipt for the same gun, which may be a trial issue as to chain of custody. Khongwiset believed it was a matter of falsification of the police reports. Morigeau responded that Deputy Yonkin was interviewed regarding his contact with Bromley and if there were residual questions

about the validity of the receipts or the circumstances surrounding it, "those are cross-examination questions in line with the trial strategy."

¶16 Also during the hearing, a question arose regarding the admissibility of prior disputes between Khongwiset and her mother and other property owners. The court cautioned Morigeau, noting "that's your tactical decision but it may not be a wise door to open." Morigeau responded that "this is where there is kind of a breakdown between my client and I but I think maybe that's been resolved." Trial remained set for March 5 but was eventually moved to March 8.

¶17 Trial commenced on March 8. During settlement of jury instructions, the court acknowledged that the defense had proposed a lesser-included offense instruction of assault, but then requested to withdraw that instruction. The court asked Morigeau to confirm. Morigeau did so and confirmed with Khongwiset that the lesser offense instruction on misdemeanor assault would not be offered. The court engaged Khongwiset in a discussion as to whether she understood the meaning of a lesser-included offense, to which Khongwiset replied "Kind of. I know it's an option of a lesser offense that comes with an admonition (sic) of guilty."

¶18 Morigeau explained that they had not discussed the issue much, noting that "at the time that that conversation was had my—that was my potential theory about how to present this case. That has since changed, given what has happened here today. So the conversation you and I had earlier today was that . . . the misdemeanor assault could be presented to the jury or we wouldn't have to talk about it at all. Is that right?" Khongwiset

8

replied, "I remember you saying that but I didn't understand it. Does that still mean that I did something wrong?" Morigeau explained that because Khongwiset had testified, counsel could tell the jury in closing argument that if the jury could not agree on the charged offense of assault with a weapon, the jury could consider the lesser offense. Morigeau then offered, "I think this conversation has been confusing, wasn't able to be fully explored."

¶19 Khongwiset asked if "not guilty" was still an option. Morigeau assured her it was. Khongwiset then asked, "So it's not saying that I did it—it's not an admonition (sic) that I assaulted her, because I do not believe that I assaulted her." Khongwiset then opted to offer the lesser-included offense instruction, stating "If there is no admission, then, yes, we could include it. Is that okay?" The court decided to include the lesser-included instruction over the State's objection. However, the court expressed residual concern that Khongwiset had not waived her right to offer the instruction knowingly or intelligently, as she believed that by doing so she would have to admit that she committed the lesser offense. Morigeau agreed, stating "that's what I understand from her now. That's not what I—yes."

¶20 Morigeau asked for additional time to discuss the issue with Khongwiset. After the discussion, Morigeau advised the court that Khongwiset "does not want to offer the lesser included offense." The court asked that a record be made to reflect the waiver of the opportunity to offer the lesser offense instruction. Khongwiset told the court "I completely understand now. We've discussed this. I would rather go for the charges that are against

me, not try and create lesser charges for somebody to convict me on. I believe that the State needs to prove its burden of what they are charging me with, all or nothing."

¶21 On March 9, 2018, Khongwiset was convicted of felony assault with a weapon. At the sentencing hearing, the court stated that jury costs were in the amount of $2,217.31. The court asked whether "there [is] any dispute as to those?" Morigeau answered, "Yes." Morigeau explained that "Well, the dispute is my client's ability – or rather inability to pay for those. . . . When they're indigent and have public defenders I think it's pretty safe to say that they don't have the ability to pay $2200 . . . ." Morigeau also stated, "I don't think the Court can make a finding that she has the ability to pay. What I'm asking to strike is both the jury costs and the public defender fee of $500."

¶22 The court asked Khongwiset if she had any physical impairment preventing her from working. Khongwiset responded that she had several lingering issues from surgeries and illness. The court then asked whether she could earn $40 per month and pay that amount over a six-year sentence. After Morigeau was granted a minute to speak to Khongwiset off the record, Morigeau then asserted "at this point, we are going—if the Court's inclined to sentence her to a six-year deferred imposition then I think she would likely be able to pay off—or she indicates she can at least make an effort to pay." The court asked, "So do you contest that the judgment should include the $2,217.31 for jury costs . . . ?" Morigeau responded, "No. So we are not contesting that." The court issued a deferred imposition of sentence for a term of six years and ordered Khongwiset to serve

thirty days in the county jail. The court also ordered Khongwiset to pay jury costs and restitution. Khongwiset appeals.

## STANDARDS OF REVIEW

¶23 A request to substitute counsel is within the sound discretion of the district court, reviewed for an abuse of discretion. *State v. Aguado*, 2017 MT 54, ¶ 8, 387 Mont. 1, 390 P.3d 628. In determining whether a district court abused its discretion, we consider both the procedures employed by the trial court during the initial inquiry into defendant's complaints, and the court's analysis of whether a defendant's claims are seemingly substantial, necessitating a further hearing. *State v. Schowengerdt*, 2018 MT 7, ¶ 16, 390 Mont. 123, 409 P.3d 38. We review de novo whether the court adhered to the applicable sentencing statute. *State v. McMaster*, 2008 MT 268, ¶ 20, 345 Mont. 172, 190 P.3d 302.

## DISCUSSION

¶24    *Issue One: Whether the District Court conducted an adequate inquiry into Khongwiset's request to substitute counsel.*

¶25 Khongwiset argues that when she requested that her counsel be replaced, the court's inquiry into Khongwiset's complaints were inadequate. Khongwiset asserts that the District Court failed to protect her right to counsel because the court did not adequately inquire into the nature, causes of the conflict, and the breakdown in communications with Morigeau, and was prejudiced by the court's refusal to substitute counsel as indicated by Khongwiset's lack of understanding concerning the lesser-included offense.

¶26 Defendants in a criminal case maintain a constitutional right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24. A defendant is not entitled

11

to counsel of his or her choice or to a meaningful relationship with counsel but is entitled to counsel that may mount an adequate defense. *State v. Johnson*, 2019 MT 34, ¶ 17, 394 Mont. 245, 435 P.3d 64. The defendant's right to substitute counsel arises only when a breakdown of the attorney-client relationship becomes of such a nature that the principal purpose of the appointment—to provide effective assistance—is frustrated. *Johnson*, ¶ 18. Thus, a defendant is entitled to substitute counsel if he or she presents material facts showing good cause for the substitution, demonstrating either (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant. *Johnson*, ¶ 19.

¶27 When a defendant raises complaints against his attorney seeking substitution of counsel, the district court must make an adequate initial inquiry into the nature of those complaints and determine if they are seemingly substantial. *State v. Cheetham,* 2016 MT 151, ¶ 20, 384 Mont. 1, 373 P.3d 45. Upon judicial review of the district court's inquiry, we do not examine whether counsel was ineffective, but rather, whether the court's inquiry into the claim was adequate. *State v. MacGregor*, 2013 MT 297, ¶ 25, 372 Mont. 142, 311 P.3d 428. A district court's inquiry is adequate when the "court considers the defendant's factual complaints together with counsel's specific explanations addressing the complaints." *Schowengerdt,* ¶ 17. Conversely, a district court's inquiry is inadequate if it fails to conduct "even a cursory inquiry" into the defendant's complaints, in which case remand is justified. *Cheetham,* ¶ 20.

¶28 The District Court conducted an adequate initial inquiry into the nature and causes of the apparent conflicts and the alleged breakdown in communication between Khongwiset and her counsel. Upon Khongwiset's request at the February 6, 2018 hearing, the court inquired into Khongwiset's request to fire Morigeau, providing her an opportunity to express all her concerns regarding Morigeau's representation. Khongwiset explained her extensive list of complaints, including: issues as to receipts for the pellet gun, evidence previously considered by her prior counsel, Morigeau's pursuit of video footage, an alleged assault and inconsistent statements by Bromley, submission of video footage as evidence, and questions regarding her *Miranda* rights. The court critically analyzed Khongwiset's factual allegations together with Morigeau's specific explanations. *Johnson*, ¶ 25. The court's inquiry revealed that all these issues were not "seemingly substantial," stemming from a "complete lack of communication," but instead, were rooted in Khongwiset's own confusion with the legal system and evidentiary issues.

¶29 Further, Khongwiset was not subject to stand trial and testify in her own defense with an inaccurate and inadequate understanding of a lesser-included offense, causing her prejudice. Like her other claims, the court investigated Khongwiset's apparent misunderstanding of the lesser-included instruction, allowed Morigeau an opportunity to clarify their previous discussions on the issue, and allowed Morigeau and Khongwiset a private discussion before Khongwiset eventually confirmed that she "completely" understood and wished to exclude the lesser-included offense. And because the court conducted an adequate initial inquiry into the nature of Khongwiset's claims, it was not

13

required to further discuss with Khongwiset whether her request for substitute counsel would have an impact on her trial date; indeed, she already had been granted a 30-day continuance.

## CONCLUSION

¶30 Khongwiset failed to present material facts demonstrating that there was an irreconcilable conflict or breakdown in communication such that she was unable to mount an adequate defense. Khongwiset's counsel reflected a willingness to work with and address Khongwiset's concerns. Further, as explained by the court, Khongwiset's counsel maintained the ability to address evidentiary issues and tactical decisions. The District Court did not abuse its discretion in denying Khongwiset's request to substitute counsel.

¶31 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

14