FILED

11/16/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0621

DA 18-0621

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 297N

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

JAY DONALD WITKOWSKI,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC-2017-05
Honorable Yvonne Laird, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Appellate Defender, Deborah S. Smith, Assistant Appellate
Defender, Helena, Montana

        For Appellee:

            Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

            Dylan J. Jensen, Valley County Attorney, Brant Light, Special Deputy
County Attorney, Glasgow, Montana

Submitted on Briefs: June 9, 2021

Decided: November 16, 2021

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jay Donald Witkowski appeals his October 2017 judgment of conviction in the Montana Seventeenth Judicial District Court, Valley County, on the offense of deliberate homicide, a felony in violation of § 45-5-102(1)(a), MCA. We affirm except for remand for entry of an amended judgment of conviction striking/omitting various specified conditions of sentence.

¶3 In February 2017, the State charged Witkowski with the deliberate homicide of Evelynn Garcia. It alleged that, in the early evening of December 31, 2016, Witkowski stabbed Ms. Garcia multiple times while she was sitting in the passenger seat of his car, clubbed her in the head with a tire iron, ran her over with his car, and then left her for dead in the middle of a remote section of highway in Valley County. Following appointment of two public defenders as co-counsel, Witkowski pled not guilty and the case proceeded in advance of jury trial scheduled for August 21, 2017. On August 15, 2017, the day before a scheduled motions hearing a week before trial, Witkowski signed a written plea agreement, and accompanying written acknowledgment and waiver of rights, calling for him to plead guilty as charged in return for a joint sentencing recommendation for a 70-year

prison term, a consecutive 10-year term for use of a dangerous weapon,[1] and no restriction on parole eligibility. In his written acknowledgement and waiver, Witkowski specifically acknowledged, *inter alia*, that he fully understood his various constitutional and other trial rights, that his counsel fully explained those rights and advised him in regard thereto, and that he fully understood the terms and effect of the plea agreement and the waiver effect of a guilty plea. The acknowledgment further asserted that his ability to understand his rights and thus make a "knowing, intelligent, and voluntary decision or plea" was not diminished or impaired, that he had "not been threatened, coerced, forced, intimidated, or [unduly] influenced" to waive his rights and change his plea "in any way," that he "freely and voluntarily" entered into the plea agreement, that he "had ample time and opportunity to discuss [his] case with [his] attorneys," and that he had "received the full benefit of their advice" and was thus "satisfied with [their] services."

¶4 At the time set for the motions hearing the next day, counsel advised the court of the plea agreement and, upon being sworn, Witkowski engaged in a supplemental record colloquy wherein he reiterated the acknowledgements and representations set forth in his prior written acknowledgment and waiver including, *inter alia*, that he was satisfied with the advice and representation provided by his counsel. He specifically denied having "any complaints at all regarding [his] attorneys" and then pled guilty to deliberate homicide

---

[1] See § 46-18-221, MCA (2015) (dangerous weapon enhancement).

pursuant to the plea agreement. The District Court accepted the change of plea and set sentencing for October 2, 2017.

¶5 However, unmentioned at the change of plea hearing, and thus unbeknownst to the court when it accepted his change of plea, Witkowski had sometime the day before mailed to the court a handwritten ex parte letter in which he requested new counsel. Contrary to his representations in his written acknowledgment and waiver or rights that day, and his sworn statements at change of plea hearing the next day, the ex parte letter asserted that he had *not* received adequate representation of counsel.[2] The District Court received the ex parte letter the day after the change of plea hearing and set a hearing for September 20, 2017. The order directed that Witkowski "shall be prepared to offer specifics to substantiate his complaints and Counsel . . . shall be prepared to respond."

¶6 At the September 2017 hearing, the District Court again advised Witkowski of his rights to remain silent and to consult with his current counsel before explaining the factual bases for his ex parte allegations. Without objection or request to first consult either with existing counsel or new counsel, Witkowski explained the various concerns that led him to write to the judge, then summarized by the court as assertions that his counsel "were not interested in [his] case," "failed to file appropriate motions," failed to remain "in contact," and "pressured [him] to take" the State's plea agreement offer. Without exception or

---

[2] The record is unclear whether Witkowski wrote and mailed his August 15th letter to the court before or after he signed the plea agreement and accompanying acknowledgment and waiver of rights that same day.

further elaboration, Witkowski acknowledged the court's characterization of his ex parte complaints.

¶7    As to the alleged disinterest of counsel, Witkowski generally explained without "specifics" that, at the time he wrote the letter, he "didn't feel that [he] and [his] attorney were seeing eye-to-eye."  As to the motion practice complaint, he said that he was not satisfied at the time with the explanation as to why his contemplated motion for a change of venue would not be viable.  He equivocated, however, that he was later "able to discuss [his] concerns with counsel" and realized that, "[a]t the time, [he] didn't quite understand all the elements that go into it."  As to the sufficiency of contact with counsel, he stated that, "upon requesting to visit with . . . counsel," it "just felt that . . . it took longer than it should have"—sometimes "up to three weeks or so."  When asked if he could "expand on" his ex parte assertion that he "felt pressured to take" the State's plea agreement offer, he said "no" and then again said "no" when asked if he still held that "contention."

¶8    In response to Witkowski's statements, appointed counsel countered that they were both very much interested in defending him based on "what was at stake" and that they "took it seriously."  Counsel further acknowledged that Witkowski wanted them to seek a change of venue, and that they may not have adequately explained the reasons for not doing so.  Counsel explained, however, that "it just didn't seem like we had the facts and the case law to file [the] [m]otion" and that "it would have [therefore] been . . . frivolous."  Counsel further acknowledged that they were unable to consult with Witkowski as frequently as

they "would [have] like[d]," but asserted that their contact with him was nonetheless "pretty regular and periodic," to wit:

> [Counsel 1]: Your Honor, my physical office is in Billings. It's five hours by car or I . . . have flown up here several times, and it was my effort to make . . . periodic, in-person contact with Mr. Witkowski as the case progressed. I also tried to make myself available by phone whenever [he] called. . . . I can say that I probably didn't visit jail as much as I would like to visit him, and that's true of every case I've ever had, . . . but I think the contact was pretty regular and periodic.
>
> .   .   .
>
> [Counsel 2]: My office is a lot closer [in Wolf Point]. I took it upon myself to visit Jay whenever I would get a message that he'd want to visit, or at least talk on the phone, and when we couldn't do that we had written correspondence. I don't think that, at least in my view, the delay in setting up any meeting that he wanted prejudiced his defense.
>
> [Court]: Do you have any additional comment, Mr. Witkowski?
>
> [Witkowski]: No, ma'am.

Counsel acknowledged further that it "was our opinion" that Witkowski should accept the State's offer and that they so "advised him," but that "the pressure was no different than the pressure that anyone would feel in his circumstances where" there were only "two bad options." The following colloquy then ensued between the court and Witkowski:

> [Court]: [I] just want[] to make sure [I] ha[ve] a clear understanding of your current position. You are no longer alleging that you were pressured into entering into the [p]lea [b]argain [a]greement with the [S]tate?
>
> [Witkowski]: Yes, ma'am.

6

¶9 In response to the court's request for any input from the State, the prosecutor characterized the plea agreement as an attempt by defense counsel to benefit Witkowski by "limit[ing] [a] potential life without parole sentence." After Witkowski responded "[n]o, ma'am" to the court's question as to whether he had "anything else you'd like the [c]ourt to consider," the hearing came to a close on the following colloquy in pertinent part:

> [Court]: [I]t appears . . . that at times you may not have understood fully why [counsel] were making the recommendations they were making, but it does not rise to the level requiring the Court to go any further with your [ex parte] [m]otion [f]or [new counsel]. So, at this time, . . . it is up to you. You can proceed . . . pro se, or you can proceed with [your current] counsel. You have expressed . . . that you are still able to communicate civilly and effectively with your counsel[,] so you were not entitled to [new counsel] at this time.

> [Witkowski]: I'd like to continue with counsel.

In its subsequent written order denying the ex parte request for new counsel, the court further reasoned that:

> [It] considered the factual complaints of the [d]efendant and . . . specific explanations [of counsel] addressing each complaint. The Court found no showing of fact indicating that counsels' performance was deficient or that any claimed deficiencies prejudiced Defendant. Therefore, the Court concluded that Defendant's complaints were not seemingly substantial. Defendant was advised of the . . . determination and that . . . he could choose to continue pro se or with current counsel. [He] advised . . . [that] he intended to proceed with current counsel.

¶10 On October 2, 2017, the court sentenced Witkowski in accordance with the parties' joint recommendation to an unsuspended 70-year prison term, a consecutive unsuspended 10-year term as a weapons enhancement, and imposed specified victim restitution, a parole

eligibility restriction (completion of two specified prison courses), various statutory fees, costs, charges, and specified "conditions." Witkowski timely appeals.

¶11 Upon a request for new appointed counsel, the court must make an initial inquiry as to the defendant's underlying "factual complaints," the "specific explanations" of counsel, and then assess whether the defendant has stated "a seemingly substantial complaint" either that counsel has "an actual conflict of interest" or that an irreconcilable conflict or complete breakdown of communication exists between client and counsel. *State v. Johnson*, 2019 MT 34, ¶¶ 22 and 27, 394 Mont. 245, 435 P.3d 64. If not, the request has no merit and the inquiry ends. *Johnson*, ¶ 22; *City of Billings v. Smith*, 281 Mont. 133, 141, 932 P.2d 1058, 1063 (1997). If so, the court must appoint independent counsel regarding the request, conduct an evidentiary hearing on the merits of the complaint(s), and then make specific findings of fact as to whether "an actual conflict of interest" exists between counsel's representation of the defendant and any "active represent[ation]" of another, *Johnson*, ¶¶ 19-20, 22, 27, and 30; *State v. Christenson*, 250 Mont. 351, 355, 820 P.2d 1303, 1306 (1991) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 1719 (1980)), or whether "irreconcilable conflict" or a "complete breakdown in communication" exists between client and counsel, thus impairing their ability to "mount an adequate defense." *State v. Rodriguez*, 2021 MT 65, ¶ 15, 403 Mont. 360, 483 P.3d 1080; *State v. Khongwiset*, 2020 MT 215, ¶¶ 26 and 30, 401 Mont. 142, 471 P.3d 51; *Johnson*, ¶¶ 17, 19-20, 22-23, 27, and 30. A defendant is entitled to new appointed counsel only upon an affirmative finding on one of those criteria. *Johnson*, ¶¶ 17-20, 22, 27, and 30.

8

¶12 While the right to new appointed counsel on a sufficient finding is grounded in the fundamental right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24, of the Montana Constitution, ineffective assistance of counsel (IAC) claims are properly cognizable only on direct appeal following conviction or on petition for postconviction relief, as applicable. *Johnson*, ¶¶ 16-17, 20, and 27. Moreover, while a defendant is entitled to appointment of independent counsel to assist in a hearing on the merits following a threshold determination of "seemingly substantial" reasons for a new counsel request, he or she has no constitutional right to independent counsel for the initial seemingly-substantial-reasons inquiry as it is merely a non-"critical-stage" preliminary inquiry into whether cause exists to trigger a "critical stage" hearing and adjudication on the merits of the request. *State v. Gazda*, 2003 MT 350, ¶¶ 26-33, 318 Mont. 516, 82 P.3d 20. *See also State v. Glick*, 2009 MT 44, ¶¶ 14-15 and 24-25, 349 Mont. 277, 203 P.3d 796 (rejecting request for overrule of *Gazda* due to lack of new authority or analysis demonstrating that the seemingly-substantial-reasons inquiry is a "critical stage" proceeding for purposes of the constitutional right to effective assistance of counsel). As in *Glick*, Witkowski urges us to overrule *Gazda*, but has similarly not demonstrated that his cited supporting authority either conflicts with or otherwise undermines our holding and rationale in *Gazda*. *Compare State v. Schowengerdt*, 2018 MT 7, ¶¶ 10-14 and 25-26, 390 Mont. 123, 409 P.3d 38 (affirming denial of new counsel request due to acquiescent waiver of defendant and independent counsel to court consideration and findings on unsworn factual complaints

9

and counsel responses—prefatory note of discretionary appointment of independent counsel to assist in initial seemingly-substantial-reasons inquiry on remand following prior inadequate inquiry); *Glick*, ¶¶ 6, 15, and 24-25 (affirming finding on remand of no actual attorney-client conflict of interest in re new counsel request—prefatory note of prior remand for appointment of independent counsel and ultimate merits hearing on the asserted conflict of interest); *State v. Rose*, 2009 MT 4, ¶¶ 12-31 and 94-102, 348 Mont. 291, 202 P.3d 749 (no abuse of discretion in failure to hold evidentiary hearing on merits of an ultimately withdrawn IAC-based new counsel request—prefatory note of prior discretionary appointment of independent counsel for the initial seemingly-substantial-reasons inquiry following multiple prior complaints and withdrawals of complaints regarding current and prior counsel); *State v. Warclub*, 2005 MT 149, ¶¶ 10-13, 16, and 34, 327 Mont. 352, 114 P.3d 254 (holding that alleged dissatisfaction with counsel was immaterial to the voluntariness of the guilty plea on motion to withdraw—prefatory note of prior discretionary appointment of independent counsel, following a psych-eval, for the second seemingly-substantial-reasons inquiry later asserted as a basis, *inter alia*, for the motion to withdraw guilty plea).

¶13     We review the procedure used, and the initial inquiry and ultimate merits findings made, on a new counsel request for an abuse of discretion. *Schowengerdt*, ¶ 16; *Johnson*, ¶ 13. We review merits hearing findings of fact only for clear error. *Schowengerdt*, ¶ 16.

¶14     Here, the record reflects that the District Court made an adequate initial inquiry as to the asserted factual bases for Witkowski's ex parte request for new counsel, as well as

10

the specific explanations of counsel regarding each of his acknowledged complaints. We agree that the court's subsequent written order erroneously referenced the apparent adequacy of "counsels' performance" as a relevant consideration in its no-seemingly-substantial-reasons finding. However, the record manifests that Witkowski made no allegation of an actual conflict of interest between counsels' representation of him and any other, and that the focus of the court's comprehensive hearing inquiry regarding his ex parte complaints, and the specific responses of counsel, was on whether an irreconcilable conflict or complete breakdown of communication existed between client and counsel. Regardless of Witkowski's state of mind when he wrote his ex parte letter the day before he changed his plea, the change of plea hearing record and the record on the court's subsequent initial inquiry into his ex parte complaints clearly manifest no seemingly substantial basis upon which to conclude or suspect that his counsel had an actual conflict of interest in representing him, or that an irreconcilable conflict or complete breakdown of communication existed between client and counsel, whether at the time of Witkowski's change of plea or the subsequent record inquiry into the factual bases of his pre-change of plea ex parte complaints. We hold that the District Court did not erroneously fail to appoint independent counsel to assist Witkowski at the initial inquiry into his ex parte complaints, fail to conduct an adequate initial inquiry into those complaints, or erroneously find that they had no seemingly substantial basis.

¶15 Witkowski further asserts that the District Court erroneously imposed various parole conditions. While they may make non-binding recommendations to the Board of Pardons

11

and Parole, district courts have no authority to impose conditions of parole except for those specifically and explicitly authorized by statute. *State v. Ring*, 2014 MT 49, ¶¶ 34-35, 374 Mont. 109, 321 P.3d 800; *State v. Heafner*, 2010 MT 87, ¶¶ 5-6, 356 Mont. 128, 231 P.3d 1087; *State v. Burch*, 2008 MT 118, ¶ 36, 342 Mont. 499, 182 P.3d 66. When no part of a sentence is deferred or suspended, imposed "conditions" of sentence are in effect conditions of parole, and thus not authorized unless specifically and explicitly authorized by statute. *Ring*, ¶¶ 34-35.

¶16 Here, no part of Witkowski's sentence is deferred or suspended. While not characterized as conditions of parole, the District Court nonetheless imposed 36 "terms and conditions" of sentence under subsection 3, most of which the State concedes are parole restrictions not authorized by statute (i.e., all except for 3(b)-(d), (m), and (n)). With the exception of subsection 3(m)(i),[3] Witkowski concurs.[4] Pursuant to the State's concession, we hold that the District Court erroneously imposed all of the conditions of sentence imposed under subsection 3 of its written judgment of conviction and sentence except for subsections 3(b)-(d), (m), and (n). Pursuant to *Heafner*, ¶¶ 11-13, we thus remand for entry of an amended judgment of conviction and sentence striking/omitting all of the conditions of sentence imposed under subsection 3 except for 3(b)-(d), (m), and (n).

---

[3] *See* § 46-23-1031, MCA (obligation to pay costs of supervision on probation and parole).

[4] He further asserts that several other subsection 3 conditions are duplicative of various subsection 2 conditions (i.e., subsections 3(l)-(m)/2(c)-(d), 3(o)/2(f), and 3(p) and (r)/2(e)), but acknowledges, however, that they are nonetheless authorized by statute. The State's response to the redundancy assertion is unclear, and neither party asserts that any such redundancy of statutorily authorized financial conditions will increase the amount of Witkowski's liability thereunder.

¶17     We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules.   Affirmed except for remand for entry of an amended judgment of conviction as specified herein.

                                    /S/ DIRK M. SANDEFUR

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE