DA 22-0434

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 72N

FILED

04/02/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0434

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

SABRINA MARIE SMITH,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DC-17-1
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James M. Siegman, Attorney at Law, Jackson, Mississippi

      For Appellee:

      Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

      Eileen Joyce, Butte-Silver Bow County Attorney, Butte, Montana

Submitted on Briefs:  January 24, 2024

Decided:  April 2, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Sabrina Marie Smith (Smith) appeals from the June 14, 2022 Judgment issued by the Second Judicial District Court, Butte-Silver Bow County. We affirm the District Court's order of revocation and imposition of sentence and remand with instructions for the court to issue an amended dispositional order granting Smith credit for 574 days of elapsed time in addition to the 73 days Smith spent incarcerated.

¶3 In January 2017, Smith was charged with felony criminal possession of dangerous drugs (CPDD) and misdemeanor criminal possession of drug paraphernalia (CPDP), stemming from a November 2016 probation and parole search of her residence. During that search, officers found both methamphetamine and methamphetamine pipes. On June 29, 2017, pursuant to a plea agreement, Smith pled guilty to the felony CPDD charge. The District Court held a sentencing hearing on October 19, 2017, and sentenced Smith to a five-year commitment to the Montana Department of Corrections (DOC), with all but 32 days suspended, and gave Smith credit for 32 days served. Smith's sentence was ordered to run concurrently with Smith's sentence in DC-11-58. The court, consistent with the plea agreement, also dismissed the misdemeanor CPDP charge. The District Court's written Judgment followed on February 12, 2018.

2

¶4     On September 5, 2019, Probation and Parole Officer Jaci Hanley (PO Hanley) filed a Report of Violation (ROV), alleging Smith committed four compliance violations: (1) failing to report an address to her PO; (2) repeatedly testing positive for methamphetamine, amphetamine, and/or EtG (alcohol); (3) failing the Enhanced Supervision Program (ESP) after missing "all of her scheduled meetings"; and (4) failing to pay fines and fees. PO Hanley's ROV noted she arrested Smith on August 29, 2019, after Smith refused placement for treatment, and characterized Smith's adjustment to supervision as "deplorable." PO Hanley told Smith she was "unsupervisable" at that time. Based on PO Hanley's ROV, the State filed a Petition to Revoke Suspended Sentence on September 9, 2019. Smith was arrested and then released on her own recognizance on September 18, 2019.

¶5     PO Hanley filed another ROV on October 6, 2020, adding two more compliance violations: (1) failing to report an actual or applicable address and (2) failing to report to her PO as directed. The State filed another Petition to Revoke on October 8, 2020. The District Court issued a Bench Warrant on October 14, 2020. Smith was arrested on the warrant on May 13, 2021, and released on her own recognizance on June 3, 2021. The District Court set an evidentiary hearing on the State's Petition to Revoke for October 26, 2021, which was continued multiple times. On February 10, 2022, Probation and Parole Officer Cacie Cain (PO Cain) filed another ROV. PO Cain's ROV reported that Smith committed several more compliance violations, including repeatedly failing to report her address; failing to report to her PO; testing positive for amphetamine, opiates, MDMA, and methamphetamine, as well as refusing to provide a sample; being terminated from ESP two

3

more times, one of which involved missing "11 out of 11" UA tests, and refusing to obtain updated chemical dependency and mental health evaluations; and continuing to fail to pay fines and fees. The State filed an Amended Petition to Revoke Suspended Sentence on February 16, 2022.

¶6 The District Court held an evidentiary hearing on March 24, 2022. At that hearing, Smith admitted to testing positive for MDMA and methamphetamine and admitted to failing to comply with ESP. The court set a dispositional hearing, which was ultimately continued and held on May 26, 2022. Also on May 26, 2022, PO Cain filed an updated recommendation recommending Smith's sentence be revoked and Smith committed to a five-year suspended DOC sentence. PO Cain noted her recommendation was made "due to [Smith's] poor history on community supervision, but also the tremendous effort she has made to abide by the rules of community supervision in the last couple of months." At the beginning of the dispositional hearing, Smith's attorney, Walter M. Hennessey, asked to "be relieved as counsel" because he thought there was a breakdown in communication and Smith wanted to withdraw her earlier admissions. The District Court asked Smith whether she was unable to work with Hennessey or was unhappy with his services, to which Smith replied that she was "confused" and "thinking otherwise on Montana State law." The court noted Hennessey had 40 years of experience, to which Smith interjected that 15 years of that had been with her as he had been representing her since she was young, and that Hennessey was a very experienced and competent lawyer whose job was to explain his interpretation of the law even when a client disagrees with him. The District Court further explained that disagreeing with or disliking Hennessey's explanation was not a basis for

4

withdrawal. Smith informed the court that she believed DOC and probation did not follow protocol or the Montana Incentives and Interventions Grid (MIIG) properly. After Smith noted she "love[d]" Hennessey, but was "confused on what's in black and white and then what [Hennessey is] telling" her, the District Court told Smith it was the court which gets to interpret the law and that the "grid isn't a mandatory thing. I'm not really a big fan of the grid. I don't particularly care what the grid says and I don't find it is an accurate reflection of a situation so I do not give the grid a lot of consideration." The District Court then took a break to allow Smith and Hennessey to discuss their issues. Upon returning from the break, Hennessey informed the court that Smith was prepared to go to sentencing. The court asked Smith if she had reviewed the matter with Hennessey and would like to have Hennessey continue to represent her. Smith responded that she did and the dispositional hearing proceeded. Both parties requested suspended DOC sentences—Smith arguing for a three-year commitment while the State sought a five-year commitment. The State noted it was not asking for Smith to be given credit for street time, but noted Smith had collectively served 73 days in jail. The District Court sentenced Smith to a five-year DOC commitment, with all five years suspended, and gave Smith credit for 73 days of time served. The District Court's written Judgment followed on June 14, 2022. The court did not address elapsed time in either its oral sentence or its written judgment.

¶7      Smith appeals. We consider the following restated issues on appeal: (1) whether the District Court abused its discretion by denying Smith's request for substitute counsel, (2) whether the District Court erred by revoking Smith's suspended sentence, and (3) whether Smith is entitled to elapsed time credit.

5

¶8 A request to substitute counsel is within the sound discretion of the district court and we review its decision for an abuse of discretion. *State v. Khongwiset*, 2020 MT 215, ¶ 23, 401 Mont. 142, 471 P.3d 51 (citing *State v. Aguado*, 2017 MT 54, ¶ 8, 387 Mont. 1, 390 P.3d 628). "In determining whether a district court abused its discretion, we consider both the procedures employed by the trial court during the initial inquiry into defendant's complaints, and the court's analysis of whether a defendant's claims are seemingly substantial, necessitating a further hearing." *Khongwiset*, ¶ 23 (citing *State v. Schowengerdt*, 2018 MT 7, ¶ 16, 390 Mont. 123, 409 P.3d 38).

¶9 We first address whether the District Court abused its discretion by not granting Smith's request to substitute Hennessey as counsel. Smith asserts the District Court should have conducted a hearing into her complaints before proceeding with the dispositional hearing. The State asserts the court conducted an adequate initial inquiry into Smith's concerns and no further hearing was required because her complaints were not seemingly substantial. We agree with the State.

¶10 A defendant is not entitled to counsel of his or her choice or to a meaningful relationship with counsel but is entitled to counsel that may mount an adequate defense; therefore, a defendant's right to substitute counsel arises only when a breakdown of the attorney-client relationship becomes of such a nature that the principal purpose of the appointment—to provide effective assistance—is frustrated. *Khongwiset*, ¶ 26 (citing *State v. Johnson*, 2019 MT 34, ¶¶ 17-18, 394 Mont. 245, 435 P.3d 64). A defendant "is entitled to substitute counsel if he or she presents material facts showing good cause for the substitution, demonstrating either (1) an actual conflict of interest; (2) an irreconcilable

6

conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant." *Khongwiset*, ¶ 26 (citing *Johnson*, ¶ 19). "When a defendant raises complaints against his [or her] attorney seeking substitution of counsel, the district court must make an adequate initial inquiry into the nature of those complaints and determine if they are seemingly substantial." *Khongwiset*, ¶ 27 (citing *State v. Cheetham*, 2016 MT 151, ¶ 20, 384 Mont. 1, 373 P.3d 45). "A district court's inquiry is adequate if it considers a defendant's factual complaints together with counsel's specific explanations addressing the complaints." *Johnson*, ¶ 22 (collecting cases). If a district court performs an adequate initial inquiry and determines the defendant's complaints are not seemingly substantial, the court does not need to conduct a hearing to address the complaint. *Johnson*, ¶ 22.

¶11 The District Court's initial inquiry into the potential breakdown in communications in this case was adequate and Smith's complaints were not seemingly substantial. While Hennessey suggested a breakdown in communications due to their disagreement over the MIIG, Smith herself never asserted a complete breakdown in communications with Hennessey and noted she "love[d]" him and he had been representing her for 15 years. The court informed Smith that disagreeing with or disliking Hennessey's opinion was not sufficient cause to substitute counsel, briefly addressed the MIIG, and took a break to allow Smith and Hennessey the opportunity to discuss their issues. Upon returning from the break, Smith confirmed she wanted Hennessey to continue representing her. Because the court conducted an adequate initial inquiry into the issues between Smith and Hennessey

and, to the extent there was a complaint, it was not seemingly substantial, there was no need for the District Court to conduct a hearing. *Johnson*, ¶ 22.

¶12 We review revocations of suspended sentences for an abuse of discretion. *State v. Pennington*, 2022 MT 180, ¶ 16, 410 Mont. 104, 517 P.3d 894.

¶13 We turn now to whether the District Court abused its discretion by revoking Smith's suspended sentence in this case. As a preliminary matter, the State asserts Smith did not preserve her claim that the District Court lacked authority to revoke her sentence. We disagree, as, at the dispositional hearing, Smith asserted issues relating to the MIIG not being followed and the District Court informed her it was not a fan of the MIIG and did not give it much consideration. Smith's appealed issue, contending the court lacked statutory authority to issue the sentence it did in this case, was preserved below.

¶14 The MIIG is used to guide community supervision of offenders with the goal of promoting accountability and long-term behavioral change. *State v. Oropeza*, 2020 MT 16, ¶ 5, 398 Mont. 379, 456 P.3d 1023. Montana law provides for two types of violations of conditions—compliance and non-compliance violations. Section 46-18-203(11)(b), MCA. A compliance violation is a violation of the conditions of supervision that is not "(i) a new criminal offense; (ii) possession of a firearm in violation of a condition of probation; (iii) behavior by the offender or any person acting at the offender's direction that could be considered stalking, harassing, or threatening the victim of the offense or a member of the victim's immediate family or support network; (iv) absconding; or (v) failure to enroll in or complete a required sex offender treatment program or a treatment program designed to treat violent offenders." Section 46-18-203(11)(b), MCA. Pursuant

8

to § 46-18-203(8)(c), MCA, for a compliance violation, the court may revoke an offender's suspended sentence upon finding (1) the offender violated the terms and conditions of the suspended sentence and (2) that "the offender's conduct indicates that the offender will not be responsive to further efforts under the incentives and interventions grid[.]" Upon making these findings, a district court is authorized to sentence the offender as provided in § 46-18-203(7), MCA. Under § 46-18-203(7), MCA, the court may revoke the prior suspended sentence and "require the offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence[.]"

¶15    It is undisputed that Smith violated the terms of her supervision by testing positive for MDMA and methamphetamine and by failing to comply with the terms of ESP. It is also undisputed that these were compliance violations, not non-compliance violations. Compliance violations do not bring immediate revocation of a deferred or suspended sentence but subject the offender to the appropriate intervention or incentive response under the MIIG; and it is only if the MIIG procedures have been exhausted and their violations documented or if the court finds that the offender's conduct indicates he or she will not be receptive to further efforts under the MIIG that the court may revoke a suspended sentence. *City of Missoula v. Pope*, 2021 MT 4, ¶ 7, 402 Mont. 416, 478 P.3d 815 (citing § 46-18-203(8), MCA).

¶16    Smith asserts the District Court failed to specifically find she would not be receptive to further efforts under the MIIG and therefore it lacked authority to revoke her suspended sentence for compliance violations. The State counters that, "[t]o the extent that the district

9

court did not specifically and explicitly find that Smith would be unresponsive to further efforts, the finding was implied and consistent with the record." We agree with the State that, while the District Court did not explicitly find Smith would be unresponsive to further efforts under the MIIG, such a finding is implied and consistent with the record in this case.

¶17 This Court "adheres to the doctrine of implied findings which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence." *Interstate Brands Corp. v. Cannon*, 218 Mont. 380, 384, 708 P.2d 573, 576 (1985). By the time the District Court revoked Smith's sentence for compliance violations in this case, nearly two years after the first ROV filed by PO Hanley, the record reflected Smith repeatedly violated the conditions of her supervision by failing to report her address, failing to report to her PO, repeatedly testing positive for drugs and alcohol and/or failing to report for UA tests, failing the ESP multiple times, and failing to pay fines and fees. Her adjustment to supervision was described as "deplorable," and PO Hanley termed Smith "unsupervisable." While the District Court did not make a specific finding that Smith would not be responsive to further efforts under the MIIG, such a finding was implied from, and is overwhelmingly supported by, the record.

¶18 Finally, both parties agree the District Court did not specifically address whether Smith was entitled to elapsed time credit when it revoked her suspended sentence and gave her credit for 73 days of time served. "Any sentence imposed under subsection (7) of § 46-18-203, MCA, requires that the judge take four steps: first, 'consider any elapsed time'; second, 'consult the records and recollection of the probation and parole officer';

10

third, 'allow all of the elapsed time served without any record or recollection of violations as credit against the sentence'; and, fourth, state the reasons for any denial of credit for elapsed time in the order." *Pennington*, ¶ 26 (quoting § 46-18-203(7)(b), MCA). Both parties also agree that, based on the record in this case, Smith is entitled to an additional 574 days of elapsed time in addition to the 73 days of time served already granted by the District Court. As such, we remand this matter with instructions for the District Court to issue an amended dispositional order granting Smith credit for 574 days of elapsed time in addition to the 73 days of time served granted in its original dispositional order.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶20 Affirmed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

11