FILED

01/17/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0310

DA 21-0310

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 9N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

GALEN LEWIS HAWK,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-20-322
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Gregory D. Birdsong, Birdsong Law Office, Santa Fe, New Mexico

      For Appellee:

          Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

          Kirsten Pabst, Missoula County Attorney, Missoula, Montana

Submitted on Briefs:  December 14, 2022

Decided:  January 17, 2023

Filed:

                                         _____
                                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Galen Lewis Hawk (Hawk) appeals from the Montana Fourth Judicial District Court's order denying his motion to withdraw his no contest plea. We affirm.

¶3 On June 20, 2020, several neighbors witnessed Hawk slashing a car's tires. One neighbor asked Hawk to leave. Hawk approached that neighbor with a knife he removed from a sheath. Hawk moved the knife toward the neighbor. The neighbor dodged the knife and yelled for someone to call the police. Hawk abandoned the knife and left the area. Law enforcement responded to a neighbor's call regarding the incident. They found Hawk with an empty sheath.

¶4 On June 30, 2020, the Missoula County Attorney filed an Information charging Hawk with assault with a deadly weapon. On July 9, 2020, Hawk was arraigned in district court. The District Court confirmed Hawk had reviewed the Information. The court also provided Hawk with an overview of his rights. Hawk pleaded not guilty. On July 13, 2020, Hawk filed an executed Acknowledgement of Rights form.

¶5 On December 10, 2020, Hawk's counsel notified the District Court at the second pretrial conference that the parties had reached a plea agreement. On December 16, 2020,

during a change of plea hearing, Hawk's counsel told the court that he had discussed the "main provisions about when one pleads guilty," including specific rights, with Hawk. However, Hawk's counsel did not file a signed guilty plea and waiver at that hearing. Counsel instead planned to sign the form on Hawk's behalf after the hearing. The court urged Hawk's counsel to review the waiver of rights with Hawk before filing.

¶6 Hawk did not object to the District Court's proposal nor to his counsel signing the plea on his behalf. Hawk confirmed to the court that he was not under the influence of any substances, that he was satisfied with his representation, and that he had adequate time to review his rights with his counsel. Hawk also represented that he understood that pleading guilty would include waiving his right to a jury trial, his right to challenge the State's evidence, and the rights his counsel previously described to him. Hawk declined the court's offer to ask any further questions about his rights and his waiver of those rights. In relevant part, the court and Hawk engaged in the following colloquy:

> THE COURT: And you've heard the representations of [your counsel] today as to your rights. Have you had adequate time to review all of your rights with [your counsel]?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you understand today that if you make a decision to change your plea from not guilty to guilty with regard to any of the charges filed by the State, that effectively you will be giving up many of your legal rights, including the rights identified by [your counsel]: the right to a jury trial, the right to challenge the State's evidence, all of those rights. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And are you comfortable waiving your rights and proceeding to a change of plea?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions at all about any of your rights?

THE DEFENDANT: No, Your Honor.

The court read a summary of the allegations in the Information before Hawk entered a plea of guilty.

¶7 Hawk's counsel interjected when the District Court asked Hawk to provide his account of the incident that gave rise to the allegations and advised the court that the parties had reached an agreement that Hawk could enter a no contest plea. The court told Hawk that a no contest plea would amount to him "effectively agreeing that if the State brought this matter before trial, that they could prove beyond a reasonable doubt to a jury that you engaged in" the alleged conduct. Hawk specifically asserted his "desire to enter a no contest plea." On December 22, 2020, Hawk's counsel filed the signed plea agreement, which included a signature made on "behalf of Galen Lewis Clark."

¶8 On February 4, 2021, the District Court held a sentencing hearing. Hawk requested to withdraw his no contest plea. Hawk alleged that his counsel did not inform him in advance that he was pleading no contest rather than guilty. The court asked Hawk to clarify whether he intended to change his plea. Hawk claimed his counsel reached an agreement with the State without consulting Hawk. The court reiterated that a no contest plea "is something less than . . . a plea of guilty[.]" Hawk said he understood the significance of a no contest plea. The court asked Hawk which plea he would enter if the no contest plea were to be withdrawn. Hawk did not directly answer that question. He responded that he

4

wanted to withdraw his no contest plea because he had yet to sign a plea bargain agreement in person. The court postponed the sentencing.

¶9 On February 18, 2021, the District Court hosted a status conference. When the court asked Hawk to clarify his desire to withdraw his no contest plea, Hawk contended that counsel had misled him to believe that he had no chance of going to trial, claimed that his counsel had a conflict of interest, and alleged his counsel had inadequately represented him by conducting limited discovery and withholding discovery from Hawk. In response to Hawk's claims of conflict, his counsel requested the court to appoint conflict counsel. The court declined that request. The court concluded that Hawk was "clear headed" and had received a complete review of his rights during the change of plea hearing. The court regarded the conflict identified by Hawk as merely a "personal conflict" rather than a technical one and specified that Hawk, rather than his counsel, had the burden of establishing a conflict.

¶10 On March 5, 2021, Hawk's counsel filed a Notice in Support of Defendant's Motion to Withdraw No Contest Plea (Notice) in fulfillment of the District Court's request. Hawk made several allegations in the Notice: other inmates receiving better deals revealed his counsel's conflict of interest; his counsel withheld discovery from him; his counsel's belief that Hawk did not have a viable defense demonstrated deficient performance; and, he did not intend to plead no contest but did so only at the instruction of his counsel.

¶11 At a hearing on March 19, 2021, the State claimed Hawk received adequate representation. Hawk again indicated that he was confused by his counsel pleading no contest on his behalf. Hawk verified that he had read the Notice, and the court went over

5

each of the allegations in the Notice. The court entered a *Gillham* order,[1] and, on April 5, 2021, presided over a *Gallagher* hearing.[2]

¶12 Regarding the alleged conflict, Hawk's counsel explained that settlements of other cases had no bearing on the deal in Hawk's case because of the idiosyncratic nature of each case. The District Court similarly reasoned that each plea offer is "highly dependent on the facts" of the case at issue.

¶13 Regarding alleged withholding of discovery, Hawk's counsel countered Hawk's claim that Hawk only received a copy of the police report by retelling a counsel-client meeting during which Hawk had the chance to review nearly all discovery in the case. Hawk admitted that he had received more discovery than the police report. The District Court summarized that Hawk had the "opportunity to review" several pieces of discovery and "had met personally with [his counsel] about" that evidence.

¶14 Regarding the alleged inadequate discovery, Hawk's counsel testified that they declined to interview the witness neighbors because each of the neighbors had a similar account of the episode. The District Court was in possession of video evidence establishing the consistencies in the respective witnesses' accounts. The uniformity of their accounts

---

[1] *In re Gillham*, 216 Mont. 279, 704 P.2d 1019 (1985); *see Marble v. State,* 2007 MT 98, ¶ 4, 337 Mont. 99, 169 P.3d 1148 ("An attorney ordered to respond pursuant to a *Gillham* order issued by a district court shall not be subject to disciplinary proceeding before the Commission on Practice nor be subject to charges of malpractice. This immunity extends to all information, testimony or documents necessarily provided in response to the allegations of ineffective assistance of counsel.")

[2] *State v. Gallagher*, 2001 MT 39, ¶ 7, 304 Mont. 215, 19 P.3d 817 (describing a closed hearing to "determine if the defendant could show by a preponderance of the evidence whether he received a fair trial based upon ineffective assistance of counsel").

undermined Hawk's interpretation of the police report that one of the neighbors would testify to Hawk being provoked before wielding his knife.

¶15 Regarding the plea, counsel recounted his efforts to explain the no contest plea to Hawk. Hawk reiterated that he was not aware of the plan to file a no contest plea and stated to the court that based on the evidence he had seen, he "might as well have said guilty." The District Court concluded that it was reasonable for Hawk's counsel to advise him to enter a no contest plea, and denied Hawk's motion to withdraw his no contest plea on the basis of ineffective assistance of counsel.

¶16 On April 9, 2021, the District Court held a sentencing hearing during which Hawk again expressed his desire to withdraw his no contest plea. Hawk explained that a change in his medications contributed to him not understanding the no contest plea he entered. The court granted Hawk additional time to file a formal motion to raise any new justifications for the withdrawal of his no contest plea. On April 14, 2021, Hawk's counsel submitted a Notice of Filing on behalf of Hawk advising the court that the defense would not file a motion to withdraw the defendant's guilty plea.

¶17 On April 23, 2021, the District Court held a sentencing hearing; Hawk's counsel told the court that Hawk was likely not prepared to proceed. Hawk confirmed his lack of readiness because he was still "trying to figure out certain things," such as how to withdraw his plea. The court expressed that it had already heard Hawk's rationale for withdrawing his plea and, thus, proceeded with the hearing. The court sentenced Hawk pursuant to the terms of the plea agreement.

¶18 On appeal, Hawk challenges the validity of his no contest plea agreement by claiming the agreement did not constitute a valid, enforceable contract, that he did not voluntarily, knowingly, and intelligently enter his no contest plea, and that he had good cause to withdraw his plea. He also argues the District Court erred by not appointing new counsel to represent Hawk following his request to withdraw his no contest plea.

¶19 The ultimate issue of the voluntariness of a guilty plea is a mixed question of law and fact, which we review de novo. *State v. Warclub*, 2005 MT 149, ¶ 14, 327 Mont. 352, 114 P.3d 254. If the defendant was aware of the consequences of the plea, and if the plea was not induced by threats, misrepresentation, or improper promises, we will not overturn a district court's denial of a motion to withdraw plea. *State v. Garner*, 2014 MT 312, ¶ 27, 377 Mont. 173, 339 P.3d 1.

On the District Court's Failure to Appoint Conflict Counsel

¶20 Hawk challenges the District Court's decision not to provide him with conflict counsel to represent him on his request to withdraw his no contest plea. The State argues that because Hawk raised the issue of whether conflict counsel should be appointed at the February 18, 2021 status conference this Court ought to refrain from invoking plain error review. The fact that the District Court considered the request for appointment of a new attorney is sufficient for review by this Court.

¶21 The State asserts that the District Court committed no reversible error because Hawk was afforded opportunities to further explain his motion without speaking through counsel and because the court concluded that it did not have concerns of ineffective assistance of counsel.

8

¶22 Hawk was entitled to more than the chance to advocate for himself; he was entitled to adequate representation at all critical stages in the proceedings. In *State v. Johnson*, 2019 MT 34, ¶ 20, 394 Mont. 245, 435 P.3d 64, we held that a district court assessing the need for substitute counsel must focus its inquiry of an alleged conflict or breakdown in the counsel-client relationship and determine whether the defendant demonstrated good cause justifying substitute counsel. *Johnson,* ¶ 20. We determined that disagreement between counsel and defendant over matters such as defense tactics and trial strategy— issues potentially relevant to an ineffective assistance of counsel claim—could lead to an irreconcilable conflict or complete breakdown in communication, justifying substitute counsel. *Johnson,* ¶ 20. Additionally, we directed district courts conducting such an inquiry to focus on whether the defendant presented material facts showing good cause for his substitution request as demonstrated by: (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant. *Johnson,* ¶ 20.

¶23 In *State v. DeWise*, 2022 MT 145, ¶ 29, 409 Mont. 284, 513 P.3d 1249, we concluded that the district court did not abuse its discretion by determining that the defendant failed to raise substantial complaints about his counsel. DeWise expressed a "general belief that counsel provided ineffective assistance" based on their "independent strategic assessments and [his belief that they] had not spent enough time with him personally or had not developed a satisfactory defense" did not result in this Court reversing the district court's decision. *DeWise*, ¶ 29. We affirmed the district court's

decision, in part, because DeWise failed to allege "any breakdown in communication or an irreconcilable conflict[.]" *DeWise*, ¶ 29.

¶24 Hawk did continue to express that he was confused about the no contest plea. However, he did not provide the District Court with facts that demonstrated good cause justifying substitute counsel. The court engaged in separate interviews with Hawk personally and conducted a *Gallagher* hearing where counsel detailed their communications with Hawk. Based on this record, we cannot conclude that it was an abuse of discretion not to appoint conflict counsel.

On the District Court's Denial of Hawk's Motion to Withdraw His No Contest Plea

¶25 Hawk points to several instances in the record at which he seemed confused about the meaning of different kinds of pleas to indicate that he did not knowingly, voluntarily, and intelligently plead no contest. Additionally, Hawk claims that the ineffective assistance of counsel he received rendered him unable to enter an enforceable plea agreement.

¶26 The State argues that the record counters the arguments offered by Hawk. First, the State points out that Hawk's counsel discussed Hawk's rights and the ramifications of waiving those rights with Hawk. Second, the State highlights that Hawk confirmed that his attorney disclosed those rights. And, third, the State notes that the colloquy between the District Court and Hawk at the change of plea hearing added to the explanation of rights that Hawk's counsel already provided.

¶27 Hawk's plea agreement was valid. Hawk was advised on multiple occasions of the significance of a no contest plea and he did not object to having his counsel sign the agreement on his behalf.

¶28 Hawk was aware of the consequences of his no contest plea. The record demonstrates that Hawk's counsel discussed the plea agreement with Hawk including its main provisions, such as waiver of the right to a trial, to appeal, to challenge the State's evidence, and to subpoena witnesses. The District Court ensured that Hawk was aware of these consequences by reiterating Hawk's rights, checking if Hawk understood the ramifications of waiving those rights, and providing Hawk with a chance to ask any questions about those rights. At the change of plea hearing, the court responded to Hawk's counsel disclaiming that Hawk may not have read the guilty plea and waiver of rights form by specifically asking Hawk if he had done so. Hawk replied that he had "done that now." And, as Hawk acknowledges, the court methodically checked to make sure he was fit to proceed, that he was satisfied with his representation, and that he knew the legal ramifications of entering the plea agreement. Hawk replied to each of the court's efforts to protect and explain his rights and did not suggest any violation of his rights. Finally, the court recounted the allegations and charges against Hawk before Hawk's counsel expressed that Hawk planned to enter a no contest plea. After the court explained the purpose of a no contest plea, it checked with Hawk that it was his desire to enter a no contest plea. Hawk responded, "Yes, Your Honor."

¶29 Hawk did not enter his no contest plea as a result of threat, misrepresentation, or improper promises. Both Hawk's counsel and the District Court repeatedly and clearly

11

outlined Hawk's various options as well as the differences between those options. The record does not contain any evidence of threats inducing Hawk's willingness to enter his no contest plea. The record also does not contain evidence of improper promises motivating Hawk to enter his no contest plea. In line with the framework this Court established in *Garner*, we uphold the court's denial of Hawk's motion to withdraw his no contest plea.

¶30 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶31 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE